COLLOTON, Circuit Judge.
Marcellus Williams was convicted by a jury in Missouri of the first-degree murder of Felicia Gayle and sentenced to death. The Supreme Court of Missouri affirmed the conviction and sentence on direct review, State v. Williams, 97 S.W.3d 462 (Mo.2003) (“Williams I ”), and subsequently affirmed the denial of his motion for postconviction relief. Williams v. State, *827 168 S.W.3d 433 (Mo.2005) (“Williams II”). Williams petitioned for a writ of habeas corpus in the district court under 28 U.S.C. § 2254. The district court denied relief on twelve of Williams’s claims, but granted relief on his claim of ineffective assistance of counsel at the penalty phase of trial. The State appeals the grant of relief, and we reverse.
I.
On August 11, 1998, Marcellus Williams drove his grandfather’s car to a bus stop and traveled by bus to University City, Missouri. Once in University City, Williams began looking for a house to burglarize, and came upon the home of Felicia Gayle. After knocking on the front door and receiving no answer, Williams knocked out a window pane near the door, reached in and unlocked the door, and entered Gayle’s home. Williams heard water running in the shower on the second floor, so he went into the kitchen, found a butcher knife, and waited.
Gayle finished her shower and went downstairs. Williams attacked Gayle, stabbing and cutting her forty-three times, and inflicting seven fatal wounds. Williams then washed Gayle’s blood from his body and concealed - his bloody shirt with a jacket. Before leaving Gayle’s home, he took Gayle’s purse, which contained, among other things, a St. Louis Post-Dispatch ruler and a calculator, and her husband’s laptop computer.
Williams returned to the bus stop, retrieved his grandfather’s car, and picked up his girlfriend, Laura Asaro. Asaro noticed that Williams was wearing a jacket, despite the summer heat. When Williams removed the jacket, Asaro noticed blood on his shirt and scratches on his neck. Asaro questioned him, and Williams claimed he had been in a fight. Asaro also saw a laptop computer in the car. Later that day, Williams put his bloody clothes in his backpack and threw them into a sewer drain.
The next day, Asaro tried to retrieve some items from the trunk of Williams’s car, but he tried to prevent her from opening it. Before he could push her away, Asaro grabbed Gayle’s purse from the trunk. Inside the purse she found Gayle’s Missouri state identification card and a black coin purse. Asaro confronted Williams about the purse, and Williams confessed that he had killed Gayle. He explained in detail how he had waited for her in the kitchen with a butcher knife, and that when she came downstairs, he stabbed her in the arm and neck, twisting the knife as he went. After confessing the details to Asaro, Williams grabbed her by the throat and threatened to kill her, her children, and her mother if she told anyone.
On August 31, 1998, Williams was arrested on unrelated charges and incarcerated at the St. Louis City Workhouse, where he shared a room with Henry Cole for a period of time. While watching television one evening, Cole and Williams saw a news report about Gayle’s murder. After the news report, Williams told Cole that he had committed the murder. Over the next few weeks, Williams and Cole had several conversations about the crime, during which Williams provided considerable details about the break-in and murder. After Cole was released from jail in June of 1999, he went to the University City police and told them about Williams’s involvement in Gayle’s murder.
As a result of the information provided by Cole, University City police contacted Asaro about the murder. Asaro told the police that Williams admitted to her that he had killed Gayle. The police then searched Williams’s grandfather’s car and found Gayle’s PosL-Dispatch ruler and cal *828 eulator. The police also recovered Gayle’s husband’s laptop, which Williams had sold after the murder.
The State charged Williams with several offenses and sought the death penalty. Williams was tried and convicted of first-degree murder, first-degree burglary, first-degree robbery, and two counts of armed criminal action.
In preparation for the penalty phase of the trial, Williams’s attorneys, Joseph Green and Chris McGraugh, hired multiple experts, including a mitigation specialist. The mitigation specialist collected records on Williams and his family, and introduced Green and McGraugh to Williams’s family so that the attorneys could collect information about his childhood development and family history.
During the penalty phase, the State presented extensive evidence of Williams’s criminal history. The jury heard testimony detailing a residential burglary in 1997, armed robberies of both a doughnut shop and a Burger King in 1998, and a threat to kill a corrections officer at the St. Louis City Workhouse in 1999. The State also introduced certified copies of Williams’s sixteen convictions: second degree burglary and stealing over $150 in 1988; second degree assault in 1988; second degree burglary in 1988; two counts each of second degree burglary and stealing over $150 in 1991; first degree robbery, armed criminal action, and unlawful use of a weapon in 2000; and first degree robbery, armed criminal action, stealing a motor vehicle, and two counts of false imprisonment in 2000. The State completed its presentation with victim impact evidence from Gayle’s family and friends.
In mitigation, Williams’s counsel presented evidence that Williams was a caring and loving father, and that his execution would have a significant effect on his family. The defense presented testimony from several of Williams’s family members and friends, including his son, his step-daughter, his mother, his aunt, his brothers, and others. They testified about Williams’s positive relationship with his son and stepdaughter. This evidence included testimony that the continued contact and visitation with Williams made the children feel loved, and that Williams would encourage the children to read and do well in school. Williams’s counsel also attempted to present testimony from Dr. Mark Cunningham that Williams’s continued relationship with his children would have a positive impact on them and that his execution would have a negative impact on them, but the trial court found the evidence inadmissible. According to Williams’s counsel, their theory of defense for the penalty phase was residual doubt; they hoped the jury would have a lingering doubt about Williams’s guilt and impose a life sentence.
The jury deliberated for less than two hours and returned a sentence of death. In doing so, the jury found the existence of ten aggravating circumstances: that the murder involved depravity of mind; that Williams committed the murder during a burglary; that Williams committed the murder during a robbery; that Williams committed the murder in order to receive money or something of value from Gayle; that Williams committed the murder in order to prevent his lawful arrest; and each of five prior convictions committed by Williams — second degree assault in 1998, first degree robbery in 2000 and 2001, and armed criminal action in 2000 and 2001. See Williams I, 97 S.W.3d at 473.
Williams appealed to the Supreme Court of Missouri, which affirmed the conviction and sentence. Id. at 466. The Supreme Court of the United States denied Williams’s petition for a writ of certiorari. Williams v. Missouri, 539 U.S. 944, 123 S.Ct. 2607, 156 L.Ed.2d 631 (2003).
*829 On May 30, 2003, Williams filed a pro se motion for postconviction relief in the Circuit Court of St. Louis County, Missouri, pursuant to Supreme Court of Missouri Rule 29.15, and appointed counsel filed an amended motion on September 8, 2003. One of the several grounds asserted by Williams was that his trial counsel was ineffective for failing to investigate and present mitigating evidence of Williams’s traumatic childhood.
In support of this claim, Williams asserted that his trial counsel intended to present expert testimony to explain Williams’s social history and criminal conduct, but the psychologist they hired was unable to establish a rapport with Williams because he was hired too late. According to Williams, if his counsel had properly investigated his background, they would have uncovered and introduced the following significant mitigating evidence: that Williams was subjected to brutally violent physical and sexual abuse by family members; that he was abandoned and resented by his parents; that his family condoned and encouraged criminal behavior and substance abuse; that he came from an impoverished and dysfunctional household; and that he was exposed to guns, drugs, and alcohol at a young age. This evidence also would have included testimony from Dr. Donald Cross, who diagnosed Williams as suffering from significant mental illnesses, including depression, drug and alcohol dependence, and post-traumatic stress disorder. According to Dr. Cross, these disorders, which went untreated, contributed to Williams’s criminal behavior, and Williams “was under the influence of extreme mental or emotional disturbance and circumstantial conditions [such] that his ability to appreciate the wrongfulness of his actions or conform his behavior to the law was substantially impaired.”
The postconviction court did not hold an evidentiary hearing on this claim, but Williams’s trial counsel, Green, submitted an affidavit in support of Williams’s motion. Green stated that he did not have sufficient time to prepare for Williams’s trial, because he was having problems getting discovery from the State and was working on another death penalty case. Green further averred that if he had obtained a diagnosis from Dr. Cross, he would have presented the evidence at trial, along with testimony from Williams’s family-
The postconviction court denied Williams’s petition. The court explained that Williams alleged that trial counsel should have presented evidence to explain mitigating factors such as Williams’s “complete social history, abusive childhood, drug and alcohol abuse, oppositional defiant disorder, and post-traumatic stress disorder.” The court concluded, however, that the presentation of this mitigating evidence would have conflicted with counsel’s reasonable trial strategy of presenting Williams as a “family man, who is innocent of such a violent murder.” The court also ruled that there was “no reasonable probability that the omitted evidence would have changed the result of [Williams’s] sentencing.” Williams appealed, and the Supreme Court of Missouri unanimously affirmed. Williams II, 168 S.W.3d at 443.
On August 29, 2006, Williams filed a federal habeas corpus petition that raised thirteen grounds for relief. The district court denied relief as to twelve of the claims, but granted relief on Williams’s claim that his trial counsel was ineffective at the penalty phase for failing to conduct an adequate investigation and present evidence regarding his background and social and medical history. The district court held that Williams’s counsel was constitu *830 tionally ineffective, and that the decision of the Supreme Court of Missouri was contrary to Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), because “[t]rial strategy cannot excuse defense counsel’s failure to perform a thorough investigation of a defendant’s background in a death penalty case.” The court also determined that if the evidence of Williams’s family, social, and mental history had been presented at trial, then there was “a reasonable probability that the outcome of the penalty phase would have been different.”
II.
In an appeal from a district court’s grant of a habeas petition, we review the district court’s legal conclusions de novo. See Jackson v. Norris, 651 F.3d 923, 925 (8th Cir.2011). When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), 28 U.S.C. § 2254(d), only if the state court’s determination:
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
Williams’s claim is governed by AEDPA and the standards set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which require that a defendant alleging a violation of the Sixth Amendment right to counsel must show both that counsel’s performance was deficient and that the deficiency prejudiced the defendant. Id. at 687, 104 S.Ct. 2052. Because resolution of the first prong is unnecessary to our decision, we assume for the sake of analysis that the Supreme Court of Missouri unreasonably applied clearly established federal law in holding that the performance of Williams’s counsel was within “the wide range of professionally competent assistance.” Id. at 690, 104 S.Ct. 2052.
A.
We focus our analysis on the second prong of Strickland — whether the alleged deficiencies in counsel’s performance prejudiced Williams. Prejudice exists under Strickland if there is “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052. Under AEDPA, if a Strickland claim is adjudicated on the merits in state court proceedings, and there is no challenge to the factual determinations of the state courts, then a federal court may grant relief only if a state court’s decision is contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).
In the state court proceedings, the Missouri courts adjudicated both prongs of Williams’s ineffective-assistance claim on the merits. The posteonviction court concluded first that trial counsel’s defense strategy was reasonable, and that Williams could not establish ineffective assistance by alleging that a different strategy would have worked better. Second, the postconviction court ruled, citing Strickland, that “there is no reasonable probability that the omitted evidence would have changed the result of Movant’s sentencing.” The Supreme Court of Missouri affirmed. The state supreme court, also citing Strickland, set out the standards for a claim of ineffective assistance of counsel, including that to establish prejudice, a movant “must show that, but for counsel’s poor performance, *831 there is a reasonable probability that the outcome of the court proceeding would have been different.” 168 S.W.3d at 439. After noting Williams’s claim that trial counsel failed to introduce sufficient evidence of his social history and discussing trial counsel’s strategy, the state supreme court explained: “The motion court found that an abusive childhood defense would have been inconsistent with the penalty phase strategy and would not have changed the jury’s sentence. The motion court did not clearly err in denying this claim without an evidentiary hearing.” Id. at 443.
Although the ineffective-assistance claim was adjudicated on the merits, the district court failed to apply deference under 28 U.S.C. § 2254(d) when considering whether Williams had established prejudice from the alleged deficient performance of trial counsel. The district court proceeded as though the claim were subject to de novo review under Strickland, holding that the proffered evidence, if presented at trial, “would establish a reasonable probability that the outcome of the penalty phase would have been different.” This was error. The proper question before the federal courts under AEDPA is whether the decision of the Supreme Court of Missouri on the question of prejudice was contrary to, or an unreasonable application of, clearly established federal law. If the state court’s determination passes muster under this standard, then Williams is not entitled to relief.
Taken together, AEDPA and Strickland establish a “doubly deferential standard” of review. Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1410, 179 L.Ed.2d 557 (2011) (internal quotation omitted). First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is “reasonably likely” that the result would have been different absent the errors. Strickland, 466 U.S. at 696, 104 S.Ct. 2052. The Strickland prejudice standard is less demanding than a more-probable-than-not standard, but the difference is “slight and matters only in the rarest case.” Harrington v. Richter, — U.S.—, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011) (internal quotation omitted). To satisfy Strickland, the likelihood of a different result must be “substantial, not just conceivable.” Id. Under AEDPA, we must then give substantial deference to the state court’s predictive judgment. So long as the state court’s decision was not “contrary to” clearly established law, the remaining question under the “unreasonable application” clause of § 2254(d) is whether the state court’s determination under the Strickland standard is unreasonable, not merely whether it is incorrect. Id. at 785. This standard was meant to be difficult to meet, and “even a strong case for relief does not mean the state court’s contrary conclusion was unreasonable.” Id. at 786.
In reviewing whether the state court’s decision involved an unreasonable application of clearly established federal law, we examine the ultimate legal conclusion reached by the court, id. at 784, not merely the statement of reasons explaining the state court’s decision. See Gill v. Mecusker, 633 F.3d 1272, 1291-92 (11th Cir.2011); Wright v. Sec’y for Dep’t of Corr., 278 F.3d 1245, 1255 (11th Cir.2002); Neal v. Puckett, 239 F.3d 683, 696 (5th Cir.2001); Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir.1997). At least where there is no “conspicuous misapplication of Supreme Court precedent” that makes the state court’s decision “contrary to” clearly established law, Wright, 278 F.3d at 1256 n. 3, the proper question is whether there is “any reasonable argument” that the state *832 court’s judgment is consistent with Strickland. Richter, 131 S.Ct. at 788; see Premo v. Moore, — U.S.—, 131 S.Ct. 733, 740, 178 L.Ed.2d 649 (2011). If the state court “reasonably could have concluded that [the petitioner] was not prejudiced by counsel’s actions,” then federal review under AEDPA is at an end. Moore, 131 S.Ct. at 744.
Williams argues that the state supreme court’s decision was “contrary to” clearly established federal law, because the court characterized the decision of the postconviction court as a finding that Williams’s proffered evidence “would not have changed the jury’s sentence.” Williams II, 168 S.W.3d at 443. This recounting of the postconviction court’s decision omits the phrase “reasonable probability” from the calculus. As a consequence, Williams contends, the Supreme Court of Missouri issued a decision contrary to Strickland and other Supreme Court precedents when it affirmed the postconviction court’s ruling.
We reject this contention. The postconviction court recited the standard correctly in its decision, saying there was “no reasonable probability that the omitted evidence would have changed the result.” The state supreme court, when framing the inquiry on appeal, likewise recited the Strickland standard precisely, saying that a movant must show a “reasonable probability” of a different outcome. As in Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002), where the state court sometimes used the term “probable” without the modifier “reasonable,” the Missouri court’s “shorthand reference” to the Strickland standard later in its opinion “may perhaps be imprecise, but if so it can no more be considered a repudiation of the standard than can [the Supreme] Court’s own occasional indulgence in the same imprecision.” Id. at 23-24, 123 S.Ct. 357. We are satisfied that the state courts understood the familiar Strickland standard and issued a decision that was not contrary to established federal law. See White v. Roper, 416 F.3d 728, 732-33 (8th Cir.2005); Stanley v. Bartley, 465 F.3d 810, 813 (7th Cir.2006); Parker v. Sec’y for Dep’t of Corr., 331 F.3d 764, 785-86 (11th Cir.2003).
We also conclude that the decision of the Supreme Court of Missouri did not involve an unreasonable application of Strickland, because the state court reasonably could have concluded that Williams was not prejudiced by the alleged deficiencies of counsel. The jury had strong reasons to choose a sentence of death over life imprisonment. The State presented substantial aggravating evidence. The jury heard the gruesome details of Gayle’s murder during the guilt phase. Williams stabbed her forty-three times, inflicting seven fatal wounds and twisting the knife as he went. And in the penalty phase, the State presented Williams’s extensive criminal record, which included sixteen convictions, along with detailed evidence of Williams’s multiple armed robberies and threat to kill a corrections officer. As a result, the jury found the existence of ten statutory aggravating factors in sentencing Williams to death.
Williams argues that the undiscovered mitigating evidence was so strong that the state court’s determination of no prejudice was unreasonable. The new evidence was designed to show that Williams was subjected to severe physical and sexual abuse as a child, and was diagnosed with depression, post-traumatic stress disorder, and drug and alcohol dependence. According to Williams, this evidence would have provided the jury with an explanation for Williams’s criminal history, and would have lessened Williams’s moral culpability in the eyes of the jurors. He also argues *833 that the evidence would have allowed jurors to find the existence of two statutory mitigating factors — that Williams was under the influence of extreme mental or emotional disturbance, and that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. Mo.Rev.Stat. § 565.032.3(2), (6).
The state court, however, reasonably could have questioned the weight of Williams’s proposed mitigating evidence. First, any testimony from Williams would be susceptible to impeachment. In a deposition during state postconviction review, Williams acknowledged that he had lied under oath in 1987 in order to secure a favorable plea agreement. When asked if he would • lie under oath “when it suits [him],” he responded, “I mean, you should know better than me.” Second, any testimony by Dr. Cross about his diagnosis of Williams could have opened the door to additional aggravating evidence, such as Williams’s prison disciplinary record — he committed more than 100 violations while incarcerated, including verbal and physical altercations with inmates and corrections officers — or rebuttal from a state expert to refute the Cross diagnoses. See Pinholster, 131 S.Ct. at 1410; Wong v. Belmontes, 558 U.S. 15, 130 S.Ct. 383, 389-90, 175 L.Ed.2d 328 (2009). The undiscovered evidence also could act as a double-edged sword, as the jurors could have concluded that Williams was “simply beyond rehabilitation” and a threat of future dangerousness because of his background and mental illnesses. See Pinholster, 131 S Ct. at 1410; cf. Atkins v. Virginia, 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).
A jury in a Missouri capital case is instructed to consider “whether the evidence as a whole justifies a sentence of death or a sentence of life imprisonment without eligibility for probation, parole, or release except by act of the governor.” Mo.Rev.Stat. § 565.032.1(2). The postconviction record here includes the aggravating and mitigating evidence presented at trial and sentencing, and the new mitigating evidence that Williams proffered in postconviction proceedings. Given the strength of the case in aggravation and the countervailing considerations with respect to the new mitigating evidence, we believe the Supreme Court of Missouri and the postconviction court reasonably concluded that there was not a reasonable probability that trial counsel’s alleged deficiencies affected the outcome of the trial.
B.
The dissent asserts that we should apply de novo review to the prejudice prong of the Strickland claim, because “we are here presented with an explicit decision by the state court that is an unreasonable application of clearly established federal law.” Post, at 847. The dissent concludes that even though there may have been a reasonable basis for the state court to deny relief, post, at 853, we may not consider that basis when applying § 2254(d)(1), because the state court assertedly gave a different reason. According to the dissent, “both state courts considered only whether the new mitigating evidence could have fit within the family-man/residual-doubt theory that was actually offered.” Post, at 850. On this basis, the dissent would review de novo whether Williams was prejudiced by the alleged ineffective assistance of counsel, and order the granting of a writ. We disagree with the dissent’s characterization of the state court decisions and with its narrower vision of deference under AED-PA.
The state postconviction court, after three paragraphs discussing whether trial *834 counsel’s performance was deficient, concluded as follows:
Movant cannot now plead ineffective assistance alleging that a different strategy would have worked better. Furthermore, there is no reasonable probability that the omitted evidence would have changed the result of Movant’s sentencing. State v. Carter, 955 S.W.2d 548 (Mo. banc 1997); Strickland v. Washington, 466 U.S. 668, 699-700, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
State Ex. 33, at 802 (emphasis added).
“Furthermore” means “in addition to what precedes.” Webster’s Third New International Dictionary 924 (2002). It is not a synonym of “Thus,” or “Therefore,” the use of which might have indicated that the postconviction court’s decision on prejudice was dependent on its analysis of counsel’s performance. In deciding whether Williams could show prejudice, the postconviction court did not say, as the dissent would have it, that it “considered only whether the new mitigating evidence could have fit within the family-man/residual-doubt theory that was actually offered.” Post, at 850. The court said “there is no reasonable probability that the omitted evidence would have changed the result of [Williams’s] sentencing.” For all we know, the postconviction court reached its conclusion of no prejudice after weighing the new mitigating evidence and the aggravating factors, just as we conclude it reasonably could have done.
The Supreme Court of Missouri, in summarizing the decision of the postconviction court, simply combined the lower court’s two conclusions into one sentence: “The motion court found that an abusive childhood defense would have been inconsistent with the penalty phase strategy and would not have changed the jury’s sentence.” 168 S.W.3d at 443 (emphasis added). The court did not say that the postconviction court’s rulings on the two prongs were interdependent. The state supreme court’s ultimate decision, moreover, was conclusory: “The motion court did not clearly err in denying this claim without an evidentiary hearing.” Id. Again, for all we know, the state supreme court determined that the aggravating factors substantially outweighed the new mitigating evidence, and concluded for that reason that the motion court “did not clearly err” in denying Williams’s claim without a hearing. On the issue of prejudice, there is no material distinction between the one-sentence unexplained conclusions of the state courts in this case and the summary ruling at issue in Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 178 L.Ed.2d 624. Even on the dissent’s view of AEDPA, therefore, Williams’s burden on the prejudice question should be to show that “there was no reasonable basis for the state court to deny relief.” Id. at 784.
In any event, even assuming the state supreme court’s opinion on prejudice should be taken to mean what the dissent suggests, we disagree with the dissent’s view about the scope of our deference to state court decisions under AEDPA. Under the dissent’s approach, a petitioner’s entitlement to relief may well depend on whether the state court writes an opinion. If the state court summarily denies a claim of prejudice, then a petitioner is required to show that there was no reasonable basis for the state court’s decision. Richter, 131 S.Ct. at 784. But on the dissent’s view, if the state court gives one reason for the decision, then the petitioner can obtain relief if the specific reason articulated is not a reasonable basis to reject his claim. This approach, which reads “unreasonable” in § 2254(d) “as having reference to the quality of the reasoning process articulated by the state court” would “place the federal court in just the kind of tutelary *835 relation to the state courts that [AEDPA was] designed to end.” Hennon, 109 F.3d at 335.
The Supreme Court’s recent decision in Premo v. Moore, 131 S.Ct. 733, is instructive. The petitioner there pleaded guilty in state court, but argued in postconviction proceedings that his counsel was ineffective for failing to move to suppress a confession. The Oregon postconviction court rejected the claim and entered an order with findings of fact and conclusions of law. Moore v. Palmateer, No. 98C-15019 (Ore.Cir.Ct. June 19, 2000), reprinted in App. to Pet. for Cert, at 198, Moore, 131 S.Ct. 733. The Oregon Court of Appeals affirmed without opinion, Moore v. Palmateer, 174 Or.App. 321, 26 P.3d 191 (2001), and the Oregon Supreme Court denied review, Moore v. Palmateer, 332 Or. 430, 30 P.3d 1184 (2001), so it is presumed that the postconviction court’s rationale prevailed in the state courts. See Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); Mark v. Ault, 498 F.3d 775, 783 (8th Cir.2007).
The state postconviction court in Moore reasoned as follows:
The Court notes that counsel rebutted petitioner’s complaint that counsel should have moved to suppress petitioner’s confession. Counsel offered two reasons for not filing the motion. Counsel asserts it was clear that petitioner was not in custody when he gave his confession, noting that petitioner “never believed that he was in custody and admitted to me that he realized he was not in custody when he and his brothers and another friend voluntarily came to the police department to give the recorded statement.” Because petitioner was not in custody when he gave his statement, there was no basis for filing a motion to suppress.
Counsel further explains that he did not move to suppress because petitioner had previously confessed his participation in the crime to his brother (Raymond Moore) and another friend. Both Raymond Moore and the friend could have been called as witnesses to repeat petitioner’s confession. A motion to suppress would have been fruitless.
The Court finds that there is very little chance that petitioner’s confession would have been suppressed. Given petitioner’s confession, counsel obtained the best plea offer he could for .petitioner and petitioner accepted the offer after careful consideration.
Based on the findings of fact set forth above, in the underlying criminal proceedings resulting in petitioner’s conviction, petitioner was not denied the right to assistance of counsel, as guaranteed by either the United States Constitution and as articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984), or the Constitution of the State of Oregon.
Moore v. Palmateer, No. 98C-15019 (Ore. Cir.Ct. June 19, 2000) (internal record citations omitted), reprinted in App. to Pet. for Cert., supra, at 204-06; see Moore v. Czerniak, 574 F.3d 1092, 1098 (9th Cir.2009); see also J.A. at 139-40, Moore, 131 S.Ct. 733, 2010 WL 2569197.
When the Supreme Court considered the petitioner’s claim for relief, the Court did not limit its analysis to the specific reasoning of the state postconviction court set forth above, including the findings that “there is very little chance that petitioner’s confession would have been suppressed,” and that any “motion to suppress would have been fruitless.” Rather, the Court concluded that “[t]he state court here reasonably could have determined that Moore *836 would have accepted the plea agreement even if his second confession had been ruled inadmissible.” Moore, 131 S.Ct. at 744 (emphasis added). After explaining why that determination would have been reasonable, the Court reiterated that “[t]he state postconviction court reasonably could have concluded that Moore was not prejudiced by counsel’s actions. Under AEDPA, that finding ends federal review.” Id. at 745 (emphasis added).
The dissent contends that we should grant more deference to “indeterminate” state-court decisions than to “explicit” state-court decisions, post, at 847-48, and argues that Moore is in the former category because the state court “did not specify” whether its ruling was based on a determination of no deficient performance, no prejudice, or both. See 131 S.Ct. at 740. We are not convinced that the Supreme Court would have taken a different approach in Moore if the state court had specified in its order that the petitioner suffered no prejudice. The Court must have assumed for purposes of analysis that the state court reached the issue of prejudice under Strickland, for otherwise the opinion would have examined this element of the claim de novo. See Rompilla v. Beard, 545 U.S. 374, 390, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005); Wiggins, 539 U.S. at 534, 123 S.Ct. 2527. The significance of Moore is that the Court focused on what the state court “reasonably could have concluded” about prejudice, not on whether the specific reasons articulated by the state court were a reasonable basis for denying relief on the prejudice prong.[1]
The Eleventh Circuit addressed the scope of AEDPA in the wake of Richter and Moore. The court affirmed a district court’s denial of habeas corpus relief, even though the district court relied on grounds other than those articulated by the state court. Gill, 633 F.3d at 1292. The Eleventh Circuit explained that “the statutory language focuses on the result, not on the reasoning that led to the result.” Id. The court therefore concluded that “[njothing in the language of AEDPA required the district court to evaluate or rely upon the correctness of the state court’s process of reasoning.” Id.; see also Jardine v. Dittmann, 658 F.3d 772, 777 (7th Cir.2011) (“This court must fill any gaps in the state court’s discussion by asking what theories ‘could have supported’ the state court’s conclusion.”) (emphasis added) (citing Richter, 131 S.Ct. at 786).[2]
*837 As we understand Richter and Moore, the Court’s opinions were premised on the text of § 2254(d) and the meaning of “decision” and “unreasonable application,” not on speculation about whether the state court actually had in mind reasons that were “reasonable” when it denied relief. But even if we assume that deference to the state court’s decision is warranted only when there is some possibility that the court specifically contemplated “reasonable” grounds for denying relief, the issuance of a written opinion with deficient reasoning does not eliminate such a possibility. Just as there is more than one way to skin a cat, there often is more than one way to resolve an appeal, and not every possible approach makes it into an opinion. A court may well leave the existence of alternative grounds unstated, because discussion of those grounds is unnecessary to the decision.
Yet a state court is not like an administrative agency to which a federal court can remand a case for a more complete explanation. See Herman, 109 F.3d at 335. The granting of an application for writ of habeas corpus sets aside the judgment of another sovereign, often many years after the proceedings are concluded, and requires the State to begin the proceedings anew. The strong federalism considerations that underlie AEDPA are well known: Federal habeas review “disturbs the State’s significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority.” Richter, 131 S.Ct. at 787 (internal quotation omitted). It is understandable that Congress would not require state courts to choose between issuing summary rulings or filing opinions with multiple alternative holdings- in order to enjoy the full measure of deference under the “unreasonable application” clause of § 2254(d).[3]
C.
In reaching our conclusion that the decision of the state courts did not involve an unreasonable application of Supreme Court precedent, we are mindful that a determination about prejudice is not an exact science. The analysis requires a predictive judgment about how jurors would consider a different record of mitigating evidence, and then an assessment of the range of reasonableness that is available to state courts under AEDPA. The meaning of “prejudice” and “reasonableness” are informed by previous decisions that have considered similar problems. Therefore, we have compared the record in this case with prior decisions of the Supreme Court that have addressed a state court’s finding of no prejudice under AED-PA in capital cases. An analysis of these cases, as well as precedent of this circuit, *838 fortifies our conclusion that the state supreme court’s decision was not unreasonable.
The Supreme Court has addressed a comparable question in three cases. In one, Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009), the Court held that the state court unreasonably determined that a petitioner had not suffered prejudice. But in that case, the aggravating evidence did not substantially outweigh the proffered mitigating evidence. In Porter, the undiscovered case in mitigation included evidence of the defendant’s “heroic military service” during the Korean War, his resulting brain abnormality and educational difficulties, his struggles to regain normality upon return from war, and his childhood history of physical abuse. 130 S.Ct. at 454. The aggravating evidence, on the other hand, was limited to three factors: that the defendant was previously convicted of a violent felony, that the murder was committed during a burglary, and that the murder was committed in a cold, calculated, and premeditated manner. Id. In this case, the scale tips more heavily toward aggravation: the jury found ten aggravating factors, including a much more extensive criminal history, and Williams presented a less compelling case in mitigation.
The evidence presented in this case is more similar to the record in two cases where the Supreme Court, applying AED-PA, has rejected challenges to state court decisions finding no prejudice under StricJcland. In Woodford v. Visciotti, the Court denied relief despite substantial, undiscovered mitigating evidence of the petitioner’s dysfunctional family background and psychological abuse, because the jury was presented with strong aggravating evidence, including that the murder was an execution-style killing during a preplanned armed robbery, and that the defendant had been convicted of several prior violent crimes. 537 U.S. at 26, 123 S.Ct. 357. In Cullen v. Pinholster, the Court denied relief, relying on its view that the proffered mitigating evidence was of questionable value. New testimony from a psychiatrist would have opened the door to rebuttal testimony, and new evidence of the defendant’s dysfunctional family — serious substance abuse, mental illness, and criminality — might have caused the jury to conclude that the defendant was beyond rehabilitation. 131 S.Ct. at 1409-10.[4]
The record in this case also resembles the record in Link v. Luebbers, 469 F.3d 1197, where this court denied relief on a claim of ineffective assistance. The petitioner in Link presented substantial undiscovered mitigating evidence similar to the evidence presented by Williams: several instances of physical, sexual, and emotional abuse during the defendant’s childhood; alcohol and drug abuse beginning during adolescence; and a diagnosis of post-traumatic stress disorder. Id. at 1201. The State in Link, as here, presented a strong *839 case in aggravation, which included the defendant’s extensive criminal history involving multiple rapes and several other violent crimes. Id. at 1200-01. Viewing the record as a whole, and assessing the significance of the new mitigating evidence, this court concluded that “the likelihood of a different outcome had the evidence been presented is not sufficient to undermine our confidence in the verdict reached by the jury.” Id. at 1205. It was reasonable for the state courts to reach the same conclusion here.
The Supreme Court of Missouri ruled that Williams did not establish prejudice resulting from allegedly deficient performance by trial counsel. For the foregoing reasons, we conclude that the state court’s decision was neither contrary to, nor an unreasonable application of, clearly established federal law. The district court did not consider the prejudice question through the deferential lens of AEDPA, and this was reversible error. The judgment is reversed, and the case is remanded with directions to dismiss the petition for writ of habeas corpus and to enter judgment for the respondent.

. The dissent's reliance on Early v. Packer, 537 U.S. 3, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam), post, at 847-48, conflates the distinct "contrary to” and "unreasonable application” clauses of § 2254(d)(1). See also post, at 850 (citing Frantz v. Hazey, 533 F.3d 724, 739 (9th Cir.2008) and Young v. Sirmons, 486 F.3d 655, 674 (10th Cir.2007)). The Supreme Court's reference in Packer to "the reasoning” of state-court decisions came in a paragraph explaining when “[a] state court's decision is 'contrary to ' [the Supreme Court's] clearly established precedents.” Id. at 830 (emphasis added) (internal quotation omitted). A federal habeas court may consider a state court's reasoning in determining whether it " 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases,' ” such as where a state court deciding an ineffective-assistance claim fails to apply Strickland altogether. Lafler v. Cooper, -U.S.-, 132 S.Ct. 1376, 1390, 182 L.Ed.2d 398 (2012) (quoting Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). But that is quite different from holding that a state court’s decision involves "an unreasonable application” of Supreme Court precedent when it is not contrary to clearly established law, and there is a reasonable basis for the decision to deny relief.

. To support its view that a federal court applying § 2254(d) may consider only reasons articulated by a state court, the dissent, post, at 847-48 & n. 8, 850, relies on footnote in a different Eleventh Circuit case, Johnson v. Secy DOC, 643 F.3d 907 (11th Cir.2011). Johnson, however, concluded only that the “no reasonable basis” language from Richter *837 did not apply when considering Strickland prejudice in that case, because the state court did not even rule on the prejudice prong of Strickland. Id. at 930 & n. 9 (citing Rompilla, 545 U.S. at 390, 125 S.Ct. 2456, Wiggins, 539 U.S. at 534, 123 S.Ct. 2527, and Ferrell v. Hall, 640 F.3d 1199, 1224-27 (11th Cir.2011)).

. The dissent also suggests, post, at 848-49, that even if we are correct in our understanding of AEDPA, we should nonetheless rule to the contrary, because the Supreme Court has not yet addressed the specific question raised here. If there is indeed an open question presented, then we perceive no thumb on the scales that requires us to eschew the better answer. Nor does it advance the dissent's cause to say that our conclusion would “step ahead of the Court's rulings,” post, at 848, for that is true whenever the inferior courts must decide a question on which the Supreme Court has not spoken directly, no matter which way the question is decided.

. In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389, the Court held that the petitioner was entitled to relief on his Strickland claim, but four Justices did not apply a deferential standard of review under AEDPA, and simply reached an "independent judgment” that there was a reasonable probability of a different outcome. Id. at 387, 399, 120 S.Ct. 1495 (opinion of Stevens, J.). Only two Justices concluded that the state court unreasonably applied Strickland under the interpretation of § 2254(d)(1) that we must follow. Id. at 416, 120 S.Ct. 1495 (opinion of O’Connor, J.). Williams also relies on Sears v. Upton, -U.S. -, 130 S.Ct. 3259, 177 L.Ed.2d 1025 (2010), Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, and Simmons v. Luebbers, 299 F.3d 929 (8th Cir.2002), but the prejudice analysis in those cases was not governed by the deferential review that applies under AEDPA.