# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3399
_____

Thomas Leo Springs

*Plaintiff - Appellant*

v.

Dexter Payne, Director, Arkansas Department of Correction

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff
_____

Submitted: January 11, 2024
Filed: March 8, 2024
_____

Before SMITH, Chief Judge, GRUENDER and SHEPHERD, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Thomas Springs was sentenced to death for the murder of his wife. After lengthy proceedings in Arkansas state court, he sought relief in federal court pursuant to 28 U.S.C. § 2254. The district court[1] denied his § 2254 petition. Springs appeals, and we affirm.

---

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

# I.

## A.

Thomas Springs abused his wife Christina for years. In December 2004, Christina left him and took their five youngest children with her, moving first to a secure local crisis center and then, after Springs began stalking the local shelter, to another shelter out of state. Christina and the children returned to the local shelter in mid-January so that the children could go to their schools and she could attend a hearing related to a protective order against Springs.

On January 21, 2005, Christina and Springs's eldest daughter took the three youngest brothers to their elementary school. Springs found out that they would be at the school and showed up there. Christina and Springs's daughter immediately notified Christina's sister, Kelly Repking. Repking picked up Christina, and they drove to the elementary school where an irate Springs was screaming and making threats and demands. Christina did not speak with him; instead, she and Repking talked with a police officer on the scene and then left. Repking drove, Christina sat in the front passenger seat, and Repking's three-year-old daughter sat in the back seat.

Not far from the school, Repking stopped for a red light at a busy intersection. Springs drove his car through the intersection and rammed head-on into Repking's car. Springs then got out of his car, walked over to Repking's, and "punched through" the front passenger window where Christina was sitting. Numerous witnesses saw Springs repeatedly punch Christina and slam her head against the dashboard. Springs then paused, returned to his vehicle, grabbed a hunting knife, and stabbed Christina "too many [times] to count," ignoring her screams and pleas. Multiple people tried to stop him, even attempting to use a car and a crowbar to do so. He did not relent until someone exclaimed that Christina was dead. Repking's car was soaked with blood, and gaping holes covered Christina's chest, back, legs, and hands.

B.

Springs was charged with capital murder and two counts of aggravated assault. At trial, an Arkansas jury found him guilty of those crimes. During the penalty phase of the trial, the evidence presented in aggravation included Springs's three prior second-degree-battery convictions, a jail guard's testimony about Springs's threats to cut the guard with a comb during his pre-trial detention, Repking's testimony about the long-term trauma both she and her daughter suffered from witnessing the murder, victim impact statements from Christina's father and another sister, and testimony from Christina and Springs's twelve-year-old son, Jacob, about his mother and the effect of her loss. In mitigation, Springs called seventeen witnesses who testified that he was a loving, involved father who doted on his children; that he was a good neighbor and helpful community member; that he was dependable and hard-working; that he played with his children outside all the time; and that kids just "loved him to death." He also introduced medical records showing that he suffered from depression and emotional distress after Christina and the kids left. Springs's sister Jannifer Springs was the only member of his family who testified in his support.

The jury unanimously found three aggravating circumstances: (1) Springs previously committed another violent felony; (2) in the commission of the capital murder, he knowingly created a great risk of death to a person other than the victim; and (3) the murder was committed in an especially cruel or depraved manner. *See* Ark. Code § 5-4-604. At least one juror found four mitigating circumstances: (1) the murder was committed while Springs was under extreme mental or emotional distress; (2) the murder was committed while Springs was acting under unusual pressures or influences or under the domination of another person; (3) the murder was committed while Springs's capacity to conform his conduct to the requirements of the law was impaired due to mental disease or defect, intoxication, or drug abuse; and (4) Springs has six children and at least one of them has expressed a wish to get an answer as to why his father killed his mother. The jury then determined that the "aggravating circumstances outweigh beyond a reasonable doubt any mitigating

-3-

circumstances found by any juror to exist" and the "aggravating circumstances justify beyond a reasonable doubt a sentence of death." *See* Ark. Code § 5-4-603. The jury recommended a capital sentence. After the return of the verdict, the court heard statements from more of Springs and Christina's children, one of whom was their son Matthew. The trial court then sentenced Springs to death.

Springs appealed, and the Arkansas Supreme Court affirmed his conviction and sentence on direct review. *See Springs v. State* (*Springs I*), 244 S.W.3d 683 (Ark. 2006). Springs then sought postconviction relief in the state trial court under Ark. R. Crim. P. 37.5. In his amended postconviction petition, Springs alleged that trial counsel was ineffective for failing to call additional mitigation witnesses, including Springs's son Matthew. Springs's trial attorneys and Matthew testified at the Rule 37.5 hearing. The trial court denied relief, concluding that much of Matthew's proposed testimony would have been cumulative to that already presented and that any testimony about the appropriate punishment would have been inadmissible. Springs appealed. The Arkansas Supreme Court held that his counsel had been ineffective in failing to investigate and call Matthew as a mitigation witness but affirmed because Springs failed to demonstrate prejudice. *See Springs v. State* (*Springs II*), 387 S.W.3d 143, 152 (Ark. 2012).

Springs turned next to federal court. He filed a 13-claim petition for *habeas corpus* relief, asserting that numerous constitutional errors occurred during his trial and sentencing. *See* 28 U.S.C. § 2254. He reiterated his claim that counsel was ineffective for failing to investigate and present Matthew's testimony during the penalty phase of the trial. Among other claims, Springs also argued that he was incompetent to stand trial and participate in the appellate process. The district court denied relief on all claims but granted a certificate of appealability limited to the ineffective-assistance claim for failure to call Matthew as a witness. The district court also denied a subsequent Rule 59(e) motion and motion to expand the certificate of appealability. Springs then sought permission from this court to expand the certificate of appealability, which was denied.

## II.

Springs appeals the denial of his ineffective-assistance claim related to the failure to investigate and call Matthew as a mitigating witness. He also, again, seeks expansion of the certificate of appealability to include his challenge to his competency to stand trial and participate in the appellate process.

### A.

In reviewing the denial of a § 2254 petition, "we review the district court's findings of fact for clear error and its conclusions of law de novo." *Harris v. Wallace*, 984 F.3d 641, 647 (8th Cir. 2021) (internal quotation marks omitted). Where the claim at issue was adjudicated on the merits in state court, we look to the last state court to have addressed the claim and defer to its decision so long as it is not "unreasonable." *Wilson v. Sellers*, 584 U.S. ---, 138 S. Ct. 1188, 1192-93 (2018); *see Zornes v. Bolin*, 37 F.4th 1411, 1415 (8th Cir. 2022) ("We evaluate the reasonableness of the state court's ultimate conclusion, not necessarily the reasoning used to justify the decision.").

We apply this deferential standard because relief is available only where the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). An "unreasonable application" of clearly established federal law "occurs when a state court correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context." *Smith v. Titus*, 958 F.3d 687, 691 (8th Cir. 2020).

Springs's asserted basis for post-conviction relief in the state court was that he received ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("[T]he right to counsel is the right to the effective assistance of counsel."). "[T]he purpose of the effective assistance guarantee of the Sixth

Amendment is not to improve the quality of legal representation" received by defendants. *Id.* at 689. It "is simply to ensure that criminal defendants receive a fair trial." *Id.* Accordingly, to succeed in bringing his ineffective-assistance claim in the first instance, Springs must show both (1) that "counsel's representation fell below an objective standard of reasonableness" in light of "prevailing professional norms" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687-88, 694.

But we do not analyze Springs's claim in the first instance. Between *Strickland* and § 2254, our review of the denial of a § 2254 petition based on ineffective assistance is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). "If this standard is difficult to meet—and it is—that is because it was meant to be." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (internal quotation marks omitted). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id.*

The Arkansas Supreme Court found that Springs's trial counsel performed deficiently by failing to investigate whether Springs's son Matthew would provide beneficial testimony. *Springs II*, 387 S.W.3d at 152. The Arkansas Supreme Court also found, however, that Springs was not prejudiced by this failure, and the court therefore affirmed the denial of his ineffective-assistance claim. The deficient-performance prong is not at issue in this appeal. Accordingly, we consider only the state court's no-prejudice determination.

*Strickland* prejudice exists when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Dorsey v. Vandergriff*, 30 F.4th 752, 757 (8th Cir. 2022). This prejudice standard requires a "substantial, not just conceivable" likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference

between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12. We assess whether there is a substantial likelihood of a different result by reweighing the aggravating evidence against the totality of available mitigating evidence. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

Springs argues that the failure to call Matthew was prejudicial because, had Matthew testified, he "would have asked the jury for mercy" and would have testified to "the positive aspects of [Springs] as a parent." After the jury returned its penalty-phase verdict, Matthew told the court that his dad "was a good guy" and a "great person" who treated his family "right most of the time" and "more than half the time he was a great dad." Matthew also talked about loving his dad and how he did not want to lose him. At the Rule 37.5 hearing, Matthew testified that, had he been asked to testify before the jury, he would have given the same sort of statement, testified about his father's "positive aspects" as a parent, asked the jury for mercy, and explained that his father was a caring, loving, good provider. Springs also asserts that his counsel's failure to call Matthew was particularly prejudicial because one of Springs's other sons testified against him and none of his children testified in his support.

In light of the extensive evidence against Springs and the gruesome nature of his crime, we see no reasonable probability that he would have received a different sentence had Matthew testified. Multiple witnesses testified about Springs's positive traits, including that he was a good father. Though it is possible, likely even, that testimony from his son may have been given more weight by the jury than the testimony of friends and neighbors, Springs fails to show how Matthew's testimony that his father was a "great person" or "more than half the time he was a great dad" would have changed Springs's sentence.

As the Arkansas Supreme Court put it, "[d]espite the fact that the jury found four mitigating circumstances, including one that a child had expressed a desire to know why his father had killed his mother, the jury determined that the aggravating

circumstances outweighed those mitigators and thus warranted a sentence of death." *Springs II*, 387 S.W.3d at 153. The jury heard evidence of the brutal and public manner in which Springs killed his wife, his violent history, and the threats he made against a prison guard while awaiting his trial. The jury also heard testimony from numerous witnesses that Springs was a good man and a good father. At least one juror found four different mitigating factors. Yet after considering all this evidence, the jury nonetheless determined that the aggravating factors outweighed any mitigating ones beyond a reasonable doubt and recommended a sentence of death based on Springs's crime. Even if Matthew's testimony had led the jury to find one or more additional mitigating factors, this would not have negated the impact of the three significant aggravating factors unanimously identified.

Moreover, as the Arkansas Supreme Court highlighted, the value of Matthew's testimony was further reduced by the risk it posed: putting Matthew on the stand would have opened the door to cross-examination about his father's abuse of him and his mother. Records from the Arkansas Department of Human Services included a report from Christina—corroborated by Matthew himself—that Springs had "grabbed Matthew around the neck and hit him on the head" shortly before Christina and the children left for the shelter. Had Matthew testified during the penalty phase, the prosecutor could have asked him about that incident and others like it. Any such testimony would have further offset the mitigating value of his testimony. *See Williams v. Roper*, 695 F.3d 825, 833 (8th Cir. 2012) (considering whether a potential witness was "susceptible to impeachment" as a factor undermining the "weight of [defendant's] proposed mitigating evidence").

We have repeatedly found that state courts do not act unreasonably in rejecting claims of prejudice for failure to present certain mitigating evidence when it is juxtaposed against overwhelming aggravating evidence. *See, e.g.*, *id.* at 832-33 (concluding that state court's no-prejudice determination was not unreasonable where counsel failed to present evidence of defendant's extreme past abuse and mental illness but the aggravating evidence revealed "the gruesome details of [the victim's] murder," including that the defendant had "stabbed her forty-three times,

inflicting seven fatal wounds and twisting the knife as he went"); *see also Link v. Luebbers*, 469 F.3d 1197, 1204-05 (8th Cir. 2006) (concluding that state court's no-prejudice determination was not unreasonable where defense counsel failed to investigate and introduce penalty-phase evidence of defendant's severe abuse and post-traumatic stress disorder diagnosis because the court was not convinced the evidence would have "influenced the jury's appraisal of [the defendant's] culpability" for rape and murder of eleven-year-old girl).  We have likewise rejected claims where a defendant asserts that a particular family member should have been called to share his specific insight when other witnesses had already established the same or similar evidence.  *See Worthington v. Roper*, 631 F.3d 487, 504-05 (8th Cir. 2011) (concluding that state court's no-prejudice determination was not unreasonable where defense counsel did not call defendant's father to testify about the defendant's abusive childhood but the jury heard similar evidence from his aunt and other witnesses).  Springs's situation is not so distinguishable from these that we can say the Arkansas Supreme Court's determination was unreasonable.

On this record, it was reasonable for the Arkansas Supreme Court to conclude that Matthew's testimony about Springs's general positive traits, or even testimony that he did not want to lose another parent, did not have a substantial likelihood of changing the jury's sentencing recommendation.  *Cf. Cullen*, 563 U.S. at 198 (finding no prejudice in sentencing phase of trial where the State presented "extensive aggravating evidence").  The district court did not err in concluding that the Arkansas Supreme Court's decision did not involve an unreasonable application of clearly established federal law.

B.

Springs also reiterates his request that we expand the certificate of appealability to consider his competence at the time of trial and throughout the appellate process.  Our jurisdiction depends on a certificate issuing, *see* 28 U.S.C. § 2253(c)(2), but the failure of a certificate to specify an issue is not a jurisdictional bar to our review.  *See Gonzalez v. Thaler*, 565 U.S. 134, 148 (2012).  However,

though we may exercise our discretion to address an issue outside the scope of the certificate in appropriate circumstances, we exercise that discretion "carefully." *Armstrong v. Hobbs*, 698 F.3d 1063, 1068-69 (8th Cir. 2012); *see also Winfield v. Roper*, 460 F.3d 1026, 1040 (8th Cir. 2006). We decline to expand the certificate of appealability here. *See Taylor v. Dayton*, 968 F.3d 857, 859 (8th Cir. 2020).

## III.

For the foregoing reasons, we affirm the judgment of the district court and deny Springs's request to expand the certificate of appealability.

_____