

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| PROSECUTING ATTORNEY, 21ST JUDICIAL CIRCUIT, EX REL. MARCELLUS WILLIAMS, | ) ) ) ) | *Opinion issued September 23, 2024* |
| Movant/Petitioner, | ) ) | |
| v. | ) ) | No. SC100764 |
| STATE OF MISSOURI, | ) ) | |
| Respondent. | ) ) | |
| and | ) ) | |
| STATE OF MISSOURI, | ) ) | |
| Respondent, | ) ) | |
| v. | ) ) | No. SC83934 |
| MARCELLUS WILLIAMS, | ) ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY**
The Honorable Bruce F. Hilton, Judge

**MOTION FOR STAY OF EXECUTION**

### Introduction

Despite nearly a quarter century of litigation in both state and federal courts, there is no credible evidence of actual innocence or any showing of a constitutional error undermining confidence in the original judgment. Like every other court that reviewed

every appeal and every habeas petition, the circuit court in this case correctly concluded there is no basis for setting aside Marcellus Williams' conviction and sentence. By proposing findings of fact and conclusions of law abandoning the claim of actual innocence and not appealing the circuit court's merits determination, the St. Louis County Prosecuting Attorney ("Prosecutor") irrefutably demonstrates what every court has found – that there is no clear and convincing evidence that Williams is actually innocent.

Prosecutor appeals a civil judgment overruling his motion to set aside or vacate Williams' first-degree murder conviction and death sentence pursuant to § 547.031, RSMo Supp. 2021. The circuit court's judgment is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. The judgment is affirmed.

An appeal from a judgment denying relief under § 547.031 does not automatically stay an execution date. *See State ex rel. Bailey v. Sengheiser*, 692 S.W.3d 20, 24 (Mo. banc 2024) (holding this Court's rules do not provide for an automatic stay of a judgment disposing of a § 547.031 motion). Williams filed a motion to stay his September 24, 2024, execution date during the pendency of this appeal from the judgment overruling Prosecutor's § 547.031 motion.[1] Further, as explained in this Court's opinion, because this Court rejects this appeal on the merits, the motion for stay of execution is overruled as moot. Because Prosecutor failed to demonstrate by clear and convincing evidence Williams' actual innocence or constitutional error at the original criminal trial that

---

[1] Prosecutor's appeal from the judgment overruling the § 547.031 motion is denominated as SC100764. The direct appeal from the criminal judgment convicting Williams of first-degree murder and sentencing him to death is denominated as SC83934. Both pending matters are resolved by this opinion, and all other pending motions are overruled.

2

undermines the confidence in the judgment of the original criminal trial, the judgment overruling Prosecutor's § 547.031 motion is affirmed.

## Facts and Procedural History

In 1998, Williams fatally stabbed Victim while burglarizing her home. Victim's purse and her husband's laptop were found in Williams' vehicle. Further, Williams' girlfriend and cellmate both testified Williams confessed to them. Following a jury trial in 2001, the circuit court entered a judgment finding Williams guilty of multiple criminal offenses, including first-degree murder, and sentencing him to death. During the ensuing 23 years, this Court and the federal courts have repeatedly rejected Williams' claims of actual innocence and constitutional error at trial.

Prosecutor filed the underlying § 547.031 motion in January 2024, following Williams' direct appeal, postconviction relief appeal, multiple unsuccessful habeas petitions, and the Governor's denial of executive clemency. Section 547.031.1 authorizes a prosecuting or circuit attorney to file a motion to vacate or set aside the judgment "at any time" upon information "the convicted person may be innocent or may have been erroneously convicted." The statute further provides the circuit court "shall issue findings of fact and conclusions of law on all issues presented" and shall "vacate or set aside the judgment where the court finds that there is clear and convincing evidence of actual innocence or constitutional error at the original trial or plea that undermines the confidence in the judgment." § 547.031.2.3.

Prosecutor initially raised four claims: (1) Williams may be actually innocent of first-degree murder; (2) Williams' trial counsel was ineffective for failing to impeach the State's witnesses; (3) Williams' trial counsel was ineffective for failing to provide different

3

mitigation evidence regarding Williams' background; and (4) the State exercised peremptory strikes of two venirepersons on the basis of race in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).

On August 19, 2024, Prosecutor and Williams received the results of further DNA testing on the murder weapon. The report indicated that DNA material found on the knife was consistent with the DNA profiles of the original prosecutor from Williams' original criminal trial and a criminal investigator. Prosecutor and Williams provided the report to the attorney general the next day.

The attorney general filed a motion in limine, which opposed Prosecutor trying any claims by consent that were not included in the original motion. In response, Prosecutor filed a motion for leave to amend the motion to vacate or set aside to advance two additional claims: (1) that the State had engaged in bad-faith destruction of fingerprints and DNA evidence on the handle of the knife in violation of *Arizona v. Youngblood*, 488 U.S. 51 (1988); and (2) that the circuit court at Williams' original criminal trial violated Williams' due process right when it overruled his motion for a continuance.

The circuit court sustained Prosecutor's recent motion to amend the pleadings to allege a claim of bad-faith destruction of fingerprint and DNA evidence found on the murder weapon, but it overruled Prosecutor's motion to amend the pleadings regarding Williams' due process claim.

Following an evidentiary hearing, the circuit court issued a 24-page judgment with extensive findings of fact and conclusions of law rejecting all of Prosecutor's claims and

4

overruling the motion to set aside or vacate Williams convictions and sentence.[2] Prosecutor filed a notice of appeal from this civil judgment directly with this Court, claiming this Court has exclusive appellate jurisdiction because "[t]he punishment imposed is death."

The circuit court's judgment, and Prosecutor's appeal, arise from a litigation history as lengthy as it is thorough. In 2003, this Court affirmed the judgment on direct appeal, specifically rejecting Williams' claim the prosecutor exercised discriminatory peremptory strikes on two venirepersons in violation of *Batson*. *State v. Williams*, 97 S.W.3d 462, 471-72 (Mo. banc 2003). This previously adjudicated *Batson* issue is essentially the same as the fourth claim in Prosecutor's § 547.031 motion.

In 2005, this Court affirmed the denial of postconviction relief. *Williams v. State*, 168 S.W.3d 433 (Mo. banc 2005). This Court specifically rejected Williams' claim his trial counsel was ineffective for failing to adequately investigate and impeach two witnesses whose testimony tied Williams to Victim's murder. *Id*. at 440-43. This Court also specifically rejected Williams' claim his trial counsel was ineffective for failing to provide adequate mitigation evidence during the penalty phase. *Id*. at 443. These previously adjudicated claims essentially are the same as the second and third claims in Prosecutor's § 547.031 motion.

Following the resolution of his direct appeal and his postconviction relief appeal, Williams filed a petition for a writ of habeas corpus in federal court. The federal district court granted relief, but the court of appeals reversed the judgment and denied habeas relief.

---

[2] The circuit court's judgment is attached as an Appendix to this opinion.

*Williams v. Roper*, 695 F.3d 825, 839 (8th Cir. 2012).[3] The United States Supreme Court denied Williams' petition for a writ of certiorari. *Williams v. Steele*, 571 U.S. 839 (2013). This Court then set a January 28, 2015, execution date.

On January 9, 2015, Williams filed a petition for a writ of habeas corpus in this Court. Out of an abundance of caution, this Court vacated the execution date, ordered additional DNA testing and habeas proceedings, and appointed a special master to ensure complete DNA testing. This Court denied Williams' habeas petition. The United States Supreme Court denied Williams' petition for a writ of certiorari. *Williams v. Steele*, 582 U.S. 937 (2017). This Court then set an August 22, 2017, execution date.

On August 14, 2017, Williams filed another petition for a writ of habeas corpus. This Court denied relief, as did the United States Supreme Court. *Williams v. Larkins*, 583 U.S. 902 (2017). As the circuit court found, the net result of Williams' habeas litigation is that this Court has heard and rejected all of his actual innocence claims based on DNA evidence, except for his most recent claim that "touch DNA" testing matches an unknown person and excluded Williams as the source.

On August 22, 2017, the Governor issued an executive order appointing a board of inquiry pursuant to § 552.070 and staying Williams' execution pending an executive

---

[3] On September 17, 2024, Williams filed a motion pursuant to Federal Rule of Civil Procedure 60(b)(6) to set aside that judgment in the district court, asking the court to relitigate his *Batson* claim based on the prosecutor's testimony at the § 547.031 hearing. *Williams v. Vandergriff*, Case No. 4:05-CV-1474-RWS (E.D. Mo. Sept. 19, 2024). The district court had already rejected Williams' identical *Batson* claim on the merits in the original judgment. *Id.* at *3. The district court rejected the motion as successive habeas petition. *Id.* at *3-4. The district court further noted that Williams "mischaracteriz[ed]" the prosecutor's testimony at the § 547.031 hearing. *Id.* at *5. Williams filed an application for a certificate of appealability, which the court of appeals denied. *Williams v. Vandergriff*, No. 24-2907 (8th Cir. Sept. 21, 2024).

clemency decision. In 2023, the Governor rescinded the prior executive order, dissolved the board of inquiry, and removed "any legal impediments to the lawful execution of Marcellus Williams" arising from the prior executive order.

Williams filed a declaratory judgment action challenging the Governor's rescission of the executive order appointing a board of inquiry and staying the execution. *State ex rel. Parson v. Walker*, 690 S.W.3d 477, 482 (Mo. banc 2024). In June 2024, this Court issued a permanent writ of prohibition barring the circuit court from taking further action other than granting the Governor's motion for judgment on the pleadings and denying Williams' petition for declaratory judgment. This Court held § 552.070, the statute authorizing the board of inquiry process, does not limit the Governor's constitutional clemency power. *Id*. at 489. This Court further held Williams alleged no cognizable liberty or life interest restraining the Governor's absolute discretion to grant or deny clemency. *Id*. This Court then set a September 24, 2024, execution date.

The only claims in Prosecutor's §547.031 motion not previously adjudicated on appeal or in a habeas proceeding are his claims that recent touch DNA testing demonstrates Williams' actual innocence and that trial prosecutors and investigators engaged in the bad-faith destruction of DNA and fingerprint evidence found on the murder weapon. The circuit court rejected the actual innocence claim in part because Prosecutor's own expert testified the DNA on the murder weapon was consistent with and likely from a St. Louis County investigator and the trial prosecutor rather than an alternate perpetrator. In his proposed findings of fact, conclusions of law, and judgment, Prosecutor expressly acknowledged this new DNA report and testimony further undermined any claim of actual innocence. In fact, Prosecutor's proposed judgment filed with the circuit court after the

7

close of all the evidence expressly requested a finding that, "As a result of additional DNA testing indicating that [the trial prosecutor's] and [an investigator's] DNA profiles were consistent with the DNA left on the knife, [Prosecutor] abandoned the claim of actual innocence. Thus, this Court need not address it here." Furthermore, the circuit court also found, as a factual matter, the credible evidence demonstrated the killer wore gloves. The circuit court rejected the fingerprint claims because a police detective credibly testified the fingerprint lifts were of insufficient quality to be used for comparison and were destroyed because they were "useless." This appeal follows.

## Jurisdiction

This Court has "exclusive appellate jurisdiction … in all cases where the punishment imposed is death." Mo. Const. art. V, § 3. But, more importantly, a § 547.031 motion "'is a new civil action' representing a 'collateral attack on the conviction and sentence.'" *State ex rel. Bailey v. Fulton*, 659 S.W.3d 909, 914 (Mo. banc 2023) (quoting *State v. Johnson*, 654 S.W.3d 883, 891 n. 10 (Mo. banc 2022)). This civil judgment overruling Prosecutor's § 547.031 motion does not impose a death sentence. It simply rejects a collateral, civil attack on the original 2001 judgment finding Williams guilty of first-degree murder and sentencing him to death. Prosecutor's appeal from the circuit court's judgment overruling the § 547.031 motion does not invoke this Court's exclusive appellate jurisdiction under article V, § 3 of the Missouri Constitution.

Because Prosecutor's appeal does not invoke this Court's article V, § 3 jurisdiction, this Court issued an order to show cause why the appeal should not be dismissed or transferred to the court of appeals. In response, Prosecutor requested this Court assume jurisdiction in light of the important issues presented. Article V, § 10 of the Missouri

8

Constitution authorizes this Court to transfer an appeal and assume jurisdiction "before or after opinion because of the general interest or importance of a question involved in the case[.]"[4]  This Court accepted and has jurisdiction because of the general interest or importance of the questions involved in the case.[5]

### Prosecutor's Appeal Does Not Automatically Stay Execution of the Judgment

Before turning to the merits, this Court must address Williams' motion asserting Prosecutor's pending appeal requires this Court to stay the September 24, 2024, execution date.  It does not.  As established, Prosecutor's § 547.031 motion is a civil action to collaterally attack the final judgment entered against Williams in 2001.  *See Fulton*, 659 S.W.3d at 914.  As this Court made clear in *Sengheiser*, 692 S.W.3d at 24, no rule of civil procedure provides for automatic stay of a judgment disposing of a § 547.031 motion.[6] *Sengheiser* further explained, because there is no authority "providing for an automatic stay of a judgment entered pursuant to section 547.031[,]" the judgment in that case was

---

[4] *See also* Rule 83.01(a) (providing this Court "on its own motion or on application of a party may transfer to this Court from the court of appeals a case in which there has been no disposition … for any of the reasons stated in Rule 83.02[,]" which authorizes transfer "because of the general interest or importance of a question involved").

[5] The attorney general correctly points out this Court would have to waive its rule regarding the time limits pertaining to what constitutes a final judgment for this Court to have jurisdiction at this early date.  Because neither Prosecutor nor Williams have or would have been able to make a showing sufficient for a stay of execution, the Court's only alternatives were (1) waive its own rule to allow for such appellate review **or** (2) carry out the execution with the appeal pending.  In the interest of justice, this Court chose the former.

[6] In *Sengheiser*, this Court explained:

> Rule 81.09 broadly applies to civil proceedings and provides for the circumstances in which an appeal stays the execution of a civil judgment.  Subdivision (a)(1) provides an appeal shall stay the execution of judgment in certain enumerated cases, not relevant here.  Subdivision (a)(2) provides for the filing of a supersedeas bond to stay the execution of a judgment.  Rule 92 governs actions seeking injunctive relief, and Rules 92.03 and 92.04 provide that either a circuit court or an appellate court *may* stay injunctive relief pending appeal.

692 S.W.3d at 24-25 (footnotes omitted).

"immediately operative and enforceable." *Id.* at 24-25. Consequently, the "circuit court's judgment [was] not automatically stayed during the pendency of the attorney general's appeal[.]" *Id.* at 25.

The same is true here. The circuit court's judgment overruling Prosecutor's § 547.031 motion leaves Williams' murder conviction and death sentence undisturbed, and Prosecutor's pending appeal does not automatically stay the scheduled execution.[7]

Further, the provisions of Rule 30 governing procedure in death penalty cases do not change this result. Rule 30.15(a) provides, "A sentence of death shall be stayed if an appeal is taken." But this mandatory stay provision plainly refers to the direct appeal from the judgment imposing a sentence of death, not an appeal from a judgment denying a collateral attack.

Similarly, Rule 30.30(b) provides:

A date of execution set pursuant to Rule 30.30(a) shall be stayed upon the receipt in this Court of proof of filing of a timely appeal or petition for writ of certiorari in the Supreme Court of the United States. No other filing in this or any other Court shall operate to stay an execution date without further order of this Court or other competent authority.

Rule 30.30(b) imposes an automatic stay of the "date of execution set pursuant to Rule 30.30(a)[.]" Rule 30.30(a) provides:

The initial date of execution shall be set following the review of the sentence required by statute and the affirmance thereof. If no timely motion for rehearing is filed, the execution shall be set not fewer than 95 days from the date of the opinion affirming the sentence. If a timely motion for rehearing is filed, the execution shall be set not fewer than 95 days from the date the motion is overruled.

---

[7] This Court, out of an abundance of caution in the show cause order regarding jurisdiction, notified the parties so they would not operate under the mistaken assumption an automatic stay of execution was in effect.

Because Rule 30.30(a) governs the "initial date of execution … following the review of the sentence required by statute[,]" the automatic stay imposed by Rule 30.30(b) is triggered by a "timely appeal" from the judgment imposing a death sentence, not an appeal from a judgment overruling a civil § 547.031 motion collaterally attacking the judgment decades after it was imposed.

More importantly, Rule 30.30(b) provides: "[N]o other filing in this or any other Court shall operate to stay an execution date without further order of this Court or other competent authority." The plain language of Rule 30.30(b) confirms Prosecutor's appeal of the judgment overruling the § 547.031 motion does not stay the execution date automatically.[8] This Court now turns to the merits of Prosecutor's appeal.

**Standard of Review**

The circuit court conducted an evidentiary hearing on Prosecutor's civil § 547.031 motion collaterally attacking the final criminal judgment. When reviewing a civil judgment entered after a bench trial, this Court will affirm the judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Lollar v. Lollar*, 609 S.W.3d 41, 45-46 (Mo. banc 2020) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). If the issue is one of law, this Court's review is *de novo* to determine if the circuit court misapplied the law. *Murphy*, 536 S.W.2d at 31.

---

[8] The fact Prosecutor's appeal does not automatically stay enforcement of the underlying criminal judgment and scheduled execution date further justified this Court granting transfer prior to opinion by the court of appeals due to the general interest and importance of the issues in this appeal.

11

"If the issue to be decided is one of fact, this Court determines whether the judgment is supported by substantial evidence and whether the judgment is against the weight of the evidence." *JAS Apartments, Inc. v. Naji*, 354 S.W.3d 175, 182 (Mo. banc 2011) (citing *Murphy*, 536 S.W.2d at 31). This Court views "the evidence in the light most favorable to the circuit court's judgment and defer[s] to the circuit court's credibility determinations." *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014). "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree of judgment is wrong." *Murphy*, 536 S.W.2d at 32.

In an action brought by a prosecuting attorney pursuant to § 547.031, the prosecuting attorney must prove his or her allegations by clear and convincing evidence. § 547.031.3. "Evidence is clear and convincing when it instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Amrine v. Roper*, 102 S.W.3d 541, 548 (Mo. banc 2003) (internal quotations omitted).

The circuit court is free to believe any, all, or none of the evidence presented at trial. *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 627 (Mo. banc 2014). The circuit court in this case made extensive findings of fact and conclusions of law. In addition, Rule 73.01(c) provides: "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached."[9]

---

[9] The circuit court cited this rule in the judgment and specifically found all credibility issues in accordance with the judgment.

**Abandoned Claim of Actual Innocence Has No Merit**

Prosecutor originally claimed Williams was actually innocent. Prosecutor makes no claim on appeal that Williams is actually innocent. After the evidentiary hearing, Prosecutor submitted proposed findings of fact, conclusions of law, and judgment to the circuit court stating there is no clear and convincing evidence of actual innocence. Prosecutor's proposed judgment states, "As a result of additional DNA testing indicating that [the trial prosecutor's] and [an investigator's] DNA profiles were consistent with the DNA left on the knife, [Prosecutor] abandoned the claim of actual innocence. Thus, this Court need not address it here." Despite Prosecutor's concession earlier this month that there is no clear and convincing evidence of actual innocence, the circuit court, nonetheless, fully adjudicated Prosecutor's claim on the merits. As the circuit court found, this Court had repeatedly rejected Williams' DNA-based actual innocence claims in prior habeas proceedings. The circuit court found the only new evidence relevant to Prosecutor's actual innocence claim are recently developed DNA profiles developed by Prosecutor's own expert, which are consistent with the DNA on the murder weapon of the trial prosecutor and a police investigator. This evidence undermined Prosecutor's claim of actual innocence and fully supports the circuit court's finding that this evidence neither shows the existence of an alternate perpetrator nor excludes Williams as the murderer.[10]

---

[10] Prosecutor no longer claims the evidence shows trial counsel violated Williams' Sixth Amendment right to effective assistance of counsel and that this constitutional error undermines confidence in the judgment. Specifically, Prosecutor had previously claimed trial counsel was ineffective for failing to impeach two witnesses and for failing to provide different mitigation evidence during the penalty phase. These claims of ineffective assistance of trial counsel were rejected nearly 20 years ago. *Williams*, 168 S.W.3d 433. The circuit court's judgment denying relief on these claims is supported by substantial evidence, is not against the weight of the

## *Batson* Claim

Prosecutor claims the circuit court erred in failing to make statutorily required findings of fact pursuant to § 547.031. In particular, Prosecutor alleges the circuit court did not address Prosecutor's *Batson* claim because the circuit court did not make a factual finding about the trial prosecutor's § 547.031 evidentiary hearing testimony regarding the peremptory strike of Venireperson No. 64. But Prosecutor did not file a Rule 78.07(c) motion to amend the judgment. Because this claim of error concerns the form and language of the circuit court's judgment, Prosecutor waived this claim of error.

Rule 78.07(c) provides, "In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." "The party appealing must object at the trial level to the failure to make a finding so the circuit court has an opportunity to correct the error." *T.T.G. v. K.S.G.*, 530 S.W.3d 489, 495 n.4 (Mo. banc 2017). In the absence of a Rule 78.07(c) motion, "the failure to make such required findings is waived." *Id.* "[I]t would not be appropriate to criticize the circuit court for failing to make any required finding." *J.A.R.*, 426 S.W.3d at 626 n.5.

In any event, Prosecutor tacitly admits the circuit court issued findings of facts and conclusions on law on his *Batson* claim but now claims these findings were not sufficient because the circuit court did not make any explicit credibility findings or any findings about the trial prosecutor's testimony. But the circuit court specifically found the trial prosecutor

---

evidence, and is not based on an erroneous declaration or application of the law. *See Lollar*, 609 S.W.3d at 45-46.

"denied systematically striking potential Black jurors." This Court presumes the circuit court found the trial prosecutor's testimony to be credible. *See* Rule 73.01(c).

Further, the circuit court correctly found this Court already rejected on direct appeal this *Batson* challenge to the same venirepersons. *Williams*, 97 S.W.3d at 471-72. There, this Court rejected Williams' argument "that striking the venireperson based upon physical appearance was inherently race-based because both he and Williams are African–American." *Id.*

Prosecutor did not present any new evidence on this claim. Now, Prosecutor attempts to twist the original prosecutor's race-neutral explanation into a showing of purposeful discrimination. Prosecutor claims the original prosecutor testified at the evidentiary hearing that "part of the reason" the original prosecutor struck that potential juror was because of race. But that argument mischaracterizes that portion of the trial prosecutor's testimony. He stated that "part of the reason" he struck that particular venireperson was because the venireperson looked similar, had the same glasses, and the same "piercing eyes" as Williams.[11] When Prosecutor specifically asked if part of the reason he struck juror number 64 was because he was black, the trial prosecutor replied: "No. Absolutely not." The circuit court was entitled to give that testimony weight, and this Court presumes it did based on the judgment entered. And again, this Court already rejected this argument with nearly identical testimony from the original prosecutor on direct appeal. *See Williams*, 97 S.W.3d at 471-72.

---

[11] As previously stated, the federal district court also found Williams "mischaracteriz[ed]" the prosecutor's testimony at the § 547.031 hearing. *Williams v. Vandergriff*, Case No. 4:05-CV-1474-RWS (E.D. Mo. Sep. 19, 2024).

In sum, Prosecutor's *Batson* argument cherry-picks the record, ignores the circuit court's factual findings, and offers no persuasive justifications for reversing this Court's previous merits determination of this claim. The circuit court's judgment denying relief of the *Batson* claim is supported by substantial evidence, is not against the weight of the evidence, and is not based on an erroneous declaration or application of the law. *See Lollar*, 609 S.W.3d at 45-46.

## Spoliation of Evidence Claim

Prosecutor argues the circuit court erred in denying Williams' *Youngblood* claim because Prosecutor presented "clear and convincing evidence" that "proved the Prosecuting Attorney's Office engaged in the destruction of potentially favorable evidence in bad faith violation of Williams' due process rights." Generally, "when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld." *Illinois v. Fisher*, 540 U.S. 544, 547 (2004). "In *Youngblood*, by contrast, [the Supreme Court] recognized that the Due Process Clause 'requires a different result when [a court] deal[s] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'" *Id.* (quoting *Youngblood*, 488 U.S. at 57). In that scenario, the Supreme Court stated that the "failure to preserve this 'potentially useful evidence' does not violate due process 'unless a criminal defendant can show bad faith on the part of the police.'" *Id.* at 547-48 (emphasis omitted) (quoting *Youngblood*, 488 U.S. at 58).

Common law spoliation of evidence occurs "when there is intentional destruction of evidence, indicating fraud and a desire to suppress the truth." *Brown v. Hamid*, 856

16

S.W.2d 51, 56-57 (Mo. banc 1993). "A party who intentionally destroys or significantly alters evidence is subject to an adverse evidentiary inference under the spoliation of evidence doctrine." *State ex rel. Zobel v. Burrell,* 167 S.W.3d 688, 691 (Mo. banc 2005). The circuit court's decision to not apply the spoliation doctrine is reviewed for abuse of discretion. *Brown*, 856 S.W.2d at 57.

Prosecutor argues the circuit court erred by not applying the spoliation doctrine because the DNA evidence was allegedly contaminated by the trial prosecutor, who handled the murder weapon without gloves. A threshold problem with Prosecutor's spoliation argument is that it glosses over the necessity of showing intentional mishandling of evidence aimed at suppressing the truth. While the trial prosecutor testified he handled the murder weapon without gloves in 2001, he did so only after the laboratory found there was nothing of evidentiary value on the knife. The trial prosecutor further testified he had been informed that "no one wanted to do any further testing on the knife." The evidence showed that, in the 23 years since trial, the understanding of and the ability to develop touch DNA profiles from trace amounts has advanced significantly. Thus, as the circuit court found, the trial prosecutor credibly testified that, as of Williams' trial in 2001, he had never heard of touch DNA. Williams' argument incorrectly imputes the current understanding of DNA transmission back to 2001 in order to equate the necessary, intentional act of handling the murder weapon with intentional spoliation. The fact the protocols for handling evidence in 2001 differs from protocols today shows only that the scientific understanding of DNA transmission has evolved over the last 23 years. On this record, the circuit court did not abuse its discretion by declining to find spoliation of evidence.

Further, Prosecutor's DNA spoliation argument also fails because it hinges on the factually untenable proposition that the uncontaminated DNA evidence would have shown it belonged to an alternate perpetrator. As the circuit court found, the actual evidence clearly refuted Prosecutor's claim the DNA on the murder weapon belonged to the actual killer, not Williams. *Prosecutor's own expert* testified the only touch DNA on the murder weapon likely came from a St. Louis County investigator. But more importantly for purposes of this claim, the circuit court found the trial prosecutor credibly testified the killer wore gloves, thus severely undermining any argument that the lack of a conclusive DNA match to Williams undermines confidence in the judgment. In sum, none of Prosecutor's evidence regarding the supposed mishandling of evidence suggests an alternate perpetrator or excludes Williams as the killer. Instead, it only supports the unremarkable fact that the original prosecutor and an investigator handled the murder weapon during the course of the investigation and trial.

Williams also argues the circuit court erred by not applying the spoliation doctrine to discarded fingerprint evidence. The record refutes this claim. A police detective testified he received fingerprint lifts that were of insufficient quality to be used for comparison and that they were destroyed because they were "useless." As with the DNA evidence, there was no evidence of bad-faith spoliation. The circuit court did not abuse its discretion by declining to apply the spoliation doctrine.

Williams also asserts there was evidence that the trial prosecutor's *voir dire* notes were destroyed intentionally, and that the circuit court, therefore, should have applied an adverse inference supporting Williams' *Batson* claim. The circuit court, however, expressly found the witness who testified at the evidentiary hearing regarding file retention

18

procedures credibly testified he had little recollection of file retention procedures during Williams' trial. The circuit court, therefore, concluded the testimony had little "probative value … as to any issue presently before this Court."

Finally, in his brief on appeal, Prosecutor now alleges the State suppressed certain evidentiary materials before trial—including an additional statement made by the jailhouse informant, the jailhouse informant's medical records, and Williams' Department of Corrections file—and this demonstrates a pattern of "animus or a conscious effort to suppress exculpatory evidence." Prosecutor did not include any of these claims in his amended § 547.031 motion. "This Court generally will not convict a lower court of error on an issue that was not put before it to decide." *Star v. Burgess*, 160 S.W.3d 376, 378 n.2 (Mo. banc 2005) (citing *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 36 (Mo. banc 1982)). As such, the circuit court did not err in failing to address a claim that was not properly before it.

### Weight Given to Current St. Louis County Prosecutor "Concessions"

Prosecutor now asks this Court to disregard all of the circuit court's findings of facts and conclusions of law because Prosecutor conceded "constitutional error" resulting from "mishandling the evidence" at Williams' trial. In other words, Prosecutor now alleges that he has conceded that his own claim is correct. Prosecutor filed his § 547.031 in support of Williams; he cannot also represent the party with the burden of proof and satisfy that burden by merely asserting his own claims are correct. This type of one-sided proceeding cannot be squared with § 547.031 or this Court's case law.

This Court has repeatedly rejected the State's attempts to concede questions of law. "[P]arties cannot stipulate to legal issues, and this Court is not bound by the [State's]

19

confession of error." *State v. Hardin*, 429 S.W.3d 417, 421 n.4 (Mo. banc 2014); *see also State v. Clark*, 490 S.W.3d 704, 716 n.4 (Mo. banc 2016) (Wilson, J., concurring); *State v. Biddle*, 599 S.W.2d 182, 186-88 (Mo. banc 1980); *State v. Tipton*, 271 S.W. 55, 61 (Mo. 1925). A prosecutor's confession of error is "entitled to and given great weight", but does not "relieve [a] Court of the performance of the judicial function." *Sibron v. New York*, 392 U.S. 40, 58 (1968) (quoting *Young v. United States*, 315 U.S. 257, 258 (1942)).[12]

Section 547.031.4 reinforces the conclusion that Prosecutor cannot concede constitutional error. That provision grants the attorney general the right to participate in this appeal. "The attorney general may file a motion to intervene and, in addition to such motion, file a motion to dismiss the motion to vacate or to set aside the judgment in any appeal filed by the prosecuting or circuit attorney." § 547.031(4). And Prosecutor's notice of appeal listed the respondent as "State of Missouri." "The attorney general shall appear on behalf of the state in the court of appeals and in the supreme court and have the

---

[12] Prosecutor asserts *Glossip v. Oklahoma*, No. 22-7466 (2024), which is currently pending before the United States Supreme Court, involves an identical issue. *Glossip* is readily distinguishable. In *Glossip*, the Oklahoma attorney general conceded that constitutional errors undermined the integrity of the petitioner's trial. Brief of Respondent Oklahoma in Support at 1, *Glossip v. Oklahoma*, No. 22-7466 (July 5, 2023). Oklahoma framed the question presented to the United States Supreme Court as: "Whether due process of law allows a capital conviction to stand where a thorough and independent review of previously unavailable information compels the **State's chief law enforcement officer** to confess error and conclude that a capital conviction was secured through potentially outcome-determinative prosecutorial misconduct." *Id.* at i (emphasis added). But here, the attorney general—Missouri's chief law enforcement officer—has defended and continues to defend Williams' original criminal conviction as permitted by statute. Further, Glossip abandoned his claim that Oklahoma's confession of constitutional error was dispositive in his merits brief. Brief of Petitioner, *Glossip v. Oklahoma*, No. 22-7466 (Apr. 23, 2024). Glossip now argues his case presents a straightforward case of prosecutorial misconduct. *Id.* at 21. Similarly, Oklahoma does not argue its confession of error is dispositive or violates the Due Process Clause of the Fourteenth Amendment. Brief of Respondent in Support of Petitioner, *Glossip v. Oklahoma,* No. 22-7466 (Apr. 23, 2024). Indeed, Oklahoma admits its confession of error is entitled only to "great weight." *Id.* at 32.

management of and represent the state in all appeals to which the state is a party other than misdemeanors and those cases in which the name of the state is used as nominal plaintiff in the trial court." § 27.050.

Prosecutor alleges the circuit court did not even consider Prosecutor's concession of constitutional error, but that claim is refuted by the record. The circuit court's judgment stated that the circuit court reviewed the parties' proposed findings of fact and conclusions of law. Prosecutor and Williams' joint proposed judgment stated that Prosecutor "acknowledged that the prior administration destroyed [DNA] evidence in bad faith in violation of Williams's constitutional rights." Additionally, the circuit court's judgment discussed Prosecutor and Williams' voided August 21, 2024, consent judgment.[13] In that agreement, Prosecutor again attempted to concede his own claims.

The circuit court's judgment denying relief on Prosecutor's spoliation claim is supported by substantial evidence, is not against the weight of the evidence, and is not based on an erroneous declaration or application of the law.

## Due Process Claim

Finally, Prosecutor asserts that the circuit court violated Williams' right to due process because Prosecutor and Williams were not given adequate time to prepare for the § 547.031 evidentiary hearing and that Prosecutor and Williams were not given adequate time to prosecute Prosecutor's § 547.031 motion at that hearing.[14] But Prosecutor and

---

[13] In that agreement, Prosecutor made his first attempt to concede his own claims. This Court entered a permanent writ ordering the circuit court to set aside that agreement and hold the hearing required by statute. *State ex rel. Bailey v. Hilton*, SC100707 (Mo. banc Aug. 21, 2024).

[14] This Court assumes, without deciding, that Williams has some due process rights once Prosecutor filed the motion pursuant to § 547.031. Prosecutor's point relied on only raises a claim relating to the length of the hearing, not the timing of the hearing. The argument section of this

21

Williams never presented these distinct constitutional claims to the circuit court and, therefore, waived appellate review.

"It is firmly established that a constitutional question must be presented at the earliest possible moment 'that good pleading and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived.'" *Callier v. Dir. of Revenue, State*, 780 S.W.2d 639, 641 (Mo. banc 1989) (quoting *Meadowbrook Country Club v. Davis*, 384 S.W.2d 611, 612 (Mo. 1964)). To properly raise a constitutional question, one must:

> (1) raise the constitutional question at the first available opportunity;
> (2) designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review.

*United C.O.D. v. State*, 150 S.W.3d 311, 313 (Mo. banc 2004).

Prosecutor and Williams did not present to the circuit court any claim of error relating to the time or manner of the evidentiary hearing. Prosecutor claims these arguments were preserved by its motion for leave to amend his pleading. That motion provided:

> The statute permits the Prosecuting Attorney to file a motion pursuant to Section 547.031 "at any time." Unfortunately, the Attorney General's refusal to seek a stay of Williams' execution date (which is currently less than one month away) pending the resolution of this matter leaves the Prosecuting Attorney with no option but to amend its motion in the interest of justice. If the Attorney General would not object to a stay of Williams' execution date, the Prosecuting Attorney would consent to re-opening discovery for further

---

point, however, presents both claims of error. "Claims of error raised in the argument portion of a brief that are not raised in a point relied on are not preserved for our review." *Hale v. Burlington N. & Santa Fe Railway Co.*, 638 S.W.3d 49, 61 (Mo. App. 2021) (internal quotation omitted). This Court, nonetheless, elects to exercise its discretion and review both claims of error. *See Griffitts v. Old Republic Ins. Co.*, 550 S.W.3d 474, 478 (Mo. banc 2018).

> fact-finding and investigation of these amended claims. However, the Prosecuting Attorney and Marcellus Williams have not been afforded the privilege of time.
>
> Due to the compressed timeline created by the Attorney General and the Missouri Supreme Court, and in the interest of justice, this Court should permit the Prosecuting Attorney to amend its motion to conform to the evidence.

Nothing in this pleading arguing why Prosecutor should have been allowed to amend his pleadings—which the circuit court permitted—preserves the argument made in the appellant's brief. Prosecutor did not object to the time or manner of the hearing anywhere in the motion. Further, the motion never mentioned any specific constitutional provisions the circuit court allegedly violated. Prosecutor's constitutional claims of error are unpreserved. Nevertheless, the circuit court provided for meaningful participation by both Prosecutor and Williams. Section 547.031 does not dictate the time or manner of the hearing. The statute merely requires the circuit court to hold a hearing, provide notice to the attorney general of that hearing, and then issue findings of facts and conclusions of law "on all issues presented." § 547.031.2.[15]

Prosecutor's own conduct at the evidentiary hearing undercuts his claim that he was not given enough time to present evidence at the evidentiary hearing. Neither Prosecutor, who was given two hours, nor Williams, was given two hours, used their full allotted time. In fact, a substantial amount of the combined time allotted was not used. And even then,

---

[15] Additionally, Prosecutor's motion for leave expressly told the circuit court that Prosecutor was not seeking a continuance. Rather, the motion for leave only asked for leave to file an amended motion because of the circumstances surrounding the impending hearing. A party cannot complain on appeal when he or she receives all the relief requested, and that party may not assert the circuit court failed to do more than requested. *McConnell v. Stallings*, 955 S.W.2d 590, 594 (Mo. App. 1997).

23

Prosecutor does not allege on appeal what additional evidence he would have presented to the circuit court.

The circuit court did not err, plainly or otherwise, as to setting the date and the duration of the Prosecutor's § 547.031 evidentiary hearing in this case.

## Conclusion

The circuit court's judgment is affirmed and the motion to stay execution is overruled as moot. No Rule 84.17 motions shall be filed in this matter, and the clerk of the Court is instructed to issue the mandate immediately.[16]

_____
Zel M. Fischer, Judge

All concur.

---

[16] Attorney General's motion regarding Prosecutor's failure to properly redact is overruled as moot.

# IN THE 21ST JUDICIAL CIRCUIT, COUNTY OF ST. LOUIS
## STATE OF MISSOURI, FAMILY COURT

FILED

SEP 1 2 2024

JOAN M. GILMER
~CUIT CLERK. ST LOUIS COU~

In re the matter of:

**Prosecuting Attorney, 21st Judicial
Circuit, ex rel. Marcellus Williams**

      **Movant/Petitioner,**

**v.**

**State of Missouri**

      **Respondent.**

**Cause No. 24SL-CC00422**

**Division    13**

## FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER AND JUDGMENT

The Court having called this matter for hearing on August 28, 2024, Movant Prosecuting Attorney appears through counsel, Matthew Jacober, Realtor; Marcellus Williams appears in person and with special counsel, Tricia J. Rojo Bushnell and Jonathan Pott;, State of Missouri appears through Assistant Attorneys General, Michael Spillane, Kelly Snyder, Andrew Clarke, Katherine Griesbach and Kirsten Pryde.

The Court having considered the record consisting of over 12,000 pages; heard the evidence presented by the Prosecuting Attorney, Attorneys General, and Relator; given proper weight and credibility to the evidence, admitted exhibits and heard arguments; reviewed Proposed Findings of Fact and Conclusions of Law submitted by the parties; None of the parties requested specific Findings of Fact and Conclusions of Law. All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the results reached. Rule 73.01(c). Any finding of fact herein equally applicable as a conclusion of law is adopted as such and any conclusion of law herein equally applicable as a finding of fact is adopted as such. The Court now being fully advised in the premises, hereby makes the following Findings of Facts, Conclusions of Law, Order and Judgment pursuant to § 547.031.2 R.S.Mo.

## PROCEDURAL HISTORY

Following a 14-day jury trial, the Circuit Court for St. Louis County on August 27, 2001 entered its judgment finding Marcellus Williams guilty of first-degree murder for the August 11, 1998 killing of F.G., as well as first-degree burglary, two counts of armed criminal action, and robbery and fixing punishment at death. The Missouri Supreme Court affirmed Williams' conviction, *State v. Williams,* 97 S.W.3d 462 (Mo. banc 2003), and affirmed the judgment denying postconviction relief. *Williams v. State,* 168 S.W.3d 433 (Mo. banc 2005).

Williams filed a petition for a writ of habeas corpus in federal court. The federal District Court granted relief, but the 8th Circuit Court of Appeals reversed the judgment and denied habeas relief. *Williams v. Roper,* 695 F.3d 825, 839 (8th Cir. 2012). The United States Supreme Court denied Williams' petition for a writ of certiorari. *Williams v Steele,* 571 U.S. 839 (2013).

In December of 2014, The Missouri Supreme Court issued a warrant of execution setting a January 28, 2015 execution date. Williams then filed a petition for a writ of habeas corpus in the Missouri Supreme Court alleging he was entitled to additional DNA testing to demonstrate actual innocence. That same Court vacated Williams' execution date and appointed a special master to ensure complete DNA testing and to report the results of the additional DNA testing.

The special master provided the Missouri Supreme Court with the results of additional DNA testing conducted on hair and fingernail samples from the crime scene and of the knife used in the murder. The parties fully briefed their arguments to the master. The Missouri Supreme Court, after reviewing the master's files, denied Williams' habeas petition because the additional DNA testing did not demonstrate Williams' actual innocence. The United States Supreme Court denied Williams' petition for a writ of certiorari. *Williams v. Steele,* 582 U.S. 937, 137 S.Ct. 2307, 198 L.Ed.2d 737 (2017).

In 2017, Williams filed another petition for writ of habeas corpus, again alleging DNA testing demonstrated his actual innocence by excluding him as a contributor of DNA found on the knife used in the murder. The Missouri Supreme Court denied relief. The United States Supreme Court denied Williams' petition for writ of certiorari. *Williams v. Larkin,* 583 U.S. 902, 138 S.Ct. 279, 199 L.Ed.2d 179 (2017).

In 2023, Williams filed a petition for a declaratory judgment alleging Governor Parson lacked authority to rescind an executive order issued by Governor Greitens on August 22, 2017 appointing a board of inquiry pursuant to § 552.070 RSMo and staying execution until the final clemency determination. On June 29, 2023 Governor Parsons rescinded said executive order, thereby dissolving the Board of Inquiry established therein. On June 4, 2024, the Missouri

Supreme Court issued a permanent writ of prohibition barring the Circuit Court from taking further action other than granting the governor's motion for judgment on the pleadings and denying Williams' petition for declaratory judgment. *State ex rel. Parson v. Walker,* No. SC100352, ___ S.W.3d ___ at 2-3. (Mo. banc June 4, 2024).

On June 4, 2024 The Missouri Supreme Court issued its order and warrant for execution setting a September 24, 2024 execution date for Williams.

Williams filed a motion to withdraw the Missouri Supreme Court's June 4, 2024 warrant of execution setting the September 24, 2024 execution date, claiming the warrant was premature because on January 26, 2024 the St. Louis County Prosecutor filed a motion to vacate Williams' first-degree murder conviction and death sentence pursuant to § 547.031, R.S.Mo. Supp. 2021. The Missouri Supreme Court overruled said motion. *State of Missouri v. Marcellus Williams,* No. SC83984 (Mo. banc July 12, 2024).

## LEGAL STANDARD

Does this Court have jurisdiction or authority to hear a Motion to Vacate or Set Aside Judgment pursuant to §547.031.1 R.S.Mo (2021), if the Supreme Court issues its order and warrant for execution before the motion is heard and ruled on?

The Legislature has expressly provided that a § 547.031 R.S.Mo (2021) motion collaterally attacking a judgment may be filed at any time in circuit court, and the statute likely does not impermissibly conflict with controlling Supreme Court rules pertaining to capital crimes for which a sentence of death has been imposed.

In 2021, due in part to Judge Draper's concurrence in *State v. Johnson,* 617 S.W.3d 439, 446 (Mo. banc 2021), the Legislature enacted § 547.031 R.S.Mo (2021) which provides:

1. A prosecuting or circuit attorney, in the jurisdiction in which the person was convicted of the offense, may file a motion to vacate or set aside the judgment at any time if he or she has information that the convicted person may be innocent or may have been erroneously convicted. The circuit court in which the person was convicted shall have jurisdiction and authority to consider, hear, and decide the motion.

2. Upon the filing of a motion to vacate or set aside the judgment, the court shall order a hearing and shall issue findings of fact and conclusions of law on all issues presented. The attorney general shall be given notice of hearing of such motion by the circuit clerk and shall be permitted to

3

appear, question witnesses, and make arguments in a hearing of such motion.

3. The court shall grant the motion of the prosecuting or circuit attorney to vacate or set aside the judgment where the court finds that there is clear and convincing evidence of actual innocence or constitutional error at the original trial or plea that undermines the confidence in the judgment. In considering the motion, the court shall take into consideration the evidence presented at the original trial or plea, the evidence presented at any direct appeal or post-conviction proceeding, including state or federal habeas action; and the information and evidence presented at the hearing on the motion.

4. The prosecuting attorney or circuit attorney shall have the authority and right to file and maintain an appeal of the denial or disposal of such motion. The attorney general may file a motion to intervene and, in addition to such motion, file a motion to dismiss the motion to vacate or to set aside the judgment in any appeal filed by the prosecuting or circuit attorney.

By its express terms, this statute not only authorizes the appropriate circuit court to decide the motion, but also requires said court to hold a hearing and to issue findings of fact and conclusions of law. Nothing in the statute excepts capital death sentence cases from the circuit court's authority, even those for which the defendant has exhausted all right to seek relief before both the Missouri State Supreme Court and United States Supreme Court. Thus, in order for the Circuit Court to dismiss for lack of authority in the instant case, it would have to find that a conflict exists between the statute and Supreme Court rules requiring exclusive Supreme Court jurisdiction, and that the Supreme Court rules prevail over the statute. *See, Brick v. Koeppen,* 672 S.W.3d 62, 65-66 Mo. App. 2023).

Only three cases have interpreted this statute and none addresses a circuit court's authority to hear the motion under the facts presented in the instant case. In *State v. Johnson,* 654 S.W.3d 883 (Mo. banc 2022), none of the parties raised the issue in what was an arguably more compelling case for restraining the circuit court's authority. In *Johnson,* unlike in the case at bar, the Supreme Court's warrant for execution was issued well before the § 547.031 motion was filed in the circuit court. Ultimately, the circuit court denied the last-minute motion on the grounds that it had insufficient time to conduct a meaningful hearing on the merits. However, rather than addressing the circuit court's authority to act after issuance of its warrant for execution, the Supreme Court denied the motion for stay of execution on the grounds that even if remanded for hearing, defendant could not make the required showing of likely success on the merits under the injunctive relief analysis also applicable when a stay is sought. *Id.* at 892-93. But in doing

4

so, a majority of the Supreme Court appears to have given at least tacit approval for a circuit court to proceed with such a motion, notwithstanding the high court's prior issuance of warrant for execution in that case. Judge Breckenridge wrote in dissent that the circuit court in her view was in error in not scheduling the § 547.031 hearing as required by statute. *Id.* at 903. Defendant Williams likely titled his Supreme Court filing as a "Motion to Withdraw Warrant of Execution" in his direct appeal case to avoid confronting the uphill "likelihood of success on the merits" argument faced when filing a motion to stay execution.

In its Motion to Dismiss the § 547.031 motion, the Attorney General submits three colorable, but far from definitive, citations of authority in support of its contention that the Supreme Court has exclusive jurisdiction over this matter. Although not directly argued, the brief implicitly makes the argument that the Supreme Court rules cited prevail over the conflicting statute, requiring the motion to be heard by the Supreme Court.

The first is **Article V, § 2** of the Missouri Constitution. However, that section simply states that the decision of the Supreme Court shall be controlling in all other courts. The second citation is Supreme Court Rule 30.03(b), which provides:

> (b) A date of execution set pursuant to Rule 30.30(a) shall be stayed upon the receipt in this Court of proof of filing of a timely appeal or petition for writ of certiorari in the Supreme Court of the United States. No other filing in this or any other Court shall operate to stay an execution date without further order of this Court or other competent authority.

However, none of the parties have requested that the Circuit Court stay the execution, as it is conceded that it lacks authority to do so. Accordingly, this rule does not expressly preclude a circuit court from hearing a § 547.031 motion.

Next, the Attorney General cites **Supreme Court Rule 91.02(b),** which provides that, in capital convictions involving a sentence of death, any habeas corpus petition may be filed in the Supreme Court in the first instance and, if first filed in another court, shall be deemed to have been filed in the Supreme Court. Although akin to a habeas petition, a § 547.031 motion is made pursuant to specific legislative enactment to prevent a prosecutor or circuit attorney to seek relief in addition to, or apart from, the convicted defendant's right to seek post-conviction and habeas relief. Thus, the statute does not directly conflict with the mandate contained in Rule 91.02(b), requiring a capital defendant to file his or her habeas petition exclusively in the Supreme Court.

Finally, the Attorney General cites the following **two cases**, neither of which directly supports its contention of exclusive Supreme Court jurisdiction in

5

this matter. *State ex rel. Nixon v. Daugherty,* 186 S.W.3d 253 (Mo. banc 2008) involved a defendant's unprecedented use of a Supreme Court civil practice rule, Rule 74.06(d), to collaterally attack the judgment denying his Rule 24.035 post-conviction relief motion. In that case, the court held that Rule 74.06(d) applied solely to civil actions and that permitting such a motion would eviscerate a post-conviction relief motion's purpose of promptly and finally adjudicating claims concerning the legality of the conviction or sentence of a defendant. In particular the court stated:

> In a death penalty case, a Rule 74.06(d) motion also frustrates the purpose of Rule 91.02(b), Rule 29.08(d), and the Court's order of June 16, 1988. All of these make clear that matters affecting a sentence of death, once it is affirmed on direct appeal and except for a motion filed under Rule 24.035 or Rule 29.15, are to be filed in this Court and not another state court.

*Id.* at 254.

As an initial matter, it should be noted that the above quote expressly exempts post-conviction relief motions from having to be filed directly in the Supreme Court. Moreover, glaringly absent from the Attorney General's brief is any mention that *Daugherty*, which was decided long before enactment of § 547.031, permits **only** (emphasis added) prosecuting attorneys to file a motion to vacate/set aside a conviction if the defendant may be innocent or that constitutional error at trial undermines the confidence in the judgment. Also of significance is the provision in § 547.031 for appellate review of a circuit court's determination, meaning that the Supreme Court would have the last word in a capital death sentence case in any event.

The second case cited is *State ex rel. Amrine v. Roper,* 102 S.W.3d 541 (Mo. banc 2003), which allowed capital offenders to raise free-standing claims of actual innocence via habeas corpus. The *Amrine* court pointed to the death penalty statute § 565.035.2 R.S.Mo., as charging it with exclusive authority to review the sentence as well as any errors enumerated by way of appeal. The Attorney General argues that *Amrine* and § 565.035 provide for exclusive Supreme Court review in death penalty cases.

However, the statute does not give the Supreme Court exclusive authority to hear collateral attacks on the judgment and sentence, such as those filed under Rule 29.15 or 24.035. *See, e.g. Anderson v. State,* 190 S.W.3d 28(Mo. banc 2006)(Post-conviction relief motion filed pursuant to Rule 29.15 in death sentence case overruled by circuit court and reversed and remanded by supreme court for re-trial of penalty phase.) And, in *State ex rel. Bailey v. Fulton,* 659 S.W.3d 909 (Mo. banc 2023), the Supreme Court recently held, "As previously stated,

6

however, like motions filed under Rules 29.15 and 24.035, a motion to vacate or set aside a conviction under '§ 547.031 is a new civil action' representing a 'collateral attack on the conviction and sentence'" (*quoting, State v. Johnson, supra* 654 S.W.3d at 891 n.10).

Accordingly, § 547.031 does not conflict with any of the Supreme Court rules cited by the Attorney General (24.035; 29.15; 29.08(d); 30.30(b); or 91.02(b)), because it is a legislatively created additional means for a prosecutor to collaterally attack the judgment and sentence under a narrow set of circumstances.

For the foregoing reasons Attorney General's Motion to Dismiss is hereby **DENIED.**

## FINDINGS OF FACT

1. More than twenty-six years ago, on August 11, 1998, Williams murdered F.G.. *State v. Williams,* 97 S.W.3d 462, 466 (Mo. banc 2003).

2. After a 14-day trial, a jury convicted Williams of one count each of first-degree murder, first-degree burglary, and first-degree robbery, and two counts of armed criminal action. *Id.* This Court sentenced Williams to death for the first-degree murder conviction. *Id.*

3. While the Court has reviewed all of the relevant court records, the principle cases affirming Williams' convictions and sentences are as follows:

   Trial:
   *State v. Williams,* 99CR-005297 (Judge Emmett O'Brien St. Louis County Circuit Court 21st Judicial Circuit);

   Direct Appeal:
   *State v. Williams,* 97 S.W.3d 462 (Mo. banc 2023);

   Direct Appeal Petition of Certiorari:
   *Williams v. Missouri,* 539 U.S. 944 (2013);

   Post-Conviction Motion Court Proceedings:
   *Williams v. State,* 03CC-2254 (Judge Emmett O'Brien St. Louis County Circuit 21st Judicial Circuit);

   Post-Conviction Appeal:
   *Williams v. State,* 168 S.W.3d 433, 438 (Mo. banc 2005);

   2015 State Petition for Writ of Habeas Corpus:

*Williams v. Steele,* SC94720 (Mo.);

2017 State Petition for Writ of Habeas Corpus:
*Williams v. Larkin,* SC96625 (Mo.);

Declaratory Judgment Action:
*State ex rel. Parson v. Walker,* 690 S.W.3d 477 (Mo. banc 2024).

4. Following the unanimous opinion denying Williams' appeal and affirming this Court's judgment of conviction, *Williams,* at 466, 475, Williams petitioned the United Supreme Court for a writ of certiorari to review the decision of the Supreme Court of Missouri affirming the circuit court's judgment of conviction. *Williams,* 539 U.S. at 944. The petition was denied. *Id.*

5. Williams then filed a motion for post-conviction relief under Supreme Court Rule 29.15. *Williams,* 168 S.W.3d at 139. In his amended motion Williams asserted in excess of thirteen claims for post-conviction relief. *Id.* at 438-47. The motion court denied Williams' motion for post-conviction relief. *Id.* at 439. The Missouri Supreme Court, in a unanimous opinion, affirmed the circuit court's denial of Williams' post-conviction motion. *Id.* at 447.

6. Williams then filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Missouri. Resp. Ex.2.

7. After the federal District Court initially granted Williams' habeas relief, the United States Court of Appeals for the Eighth Circuit reversed the District Court's judgment and denied Williams' federal habeas relief. *Williams v. Roper,* 695 F.3d 825, 839 (8th Cir. 2012).

8. Williams petitioned the United States Supreme Court for a writ of certiorari to review the decision of the United States Court of Appeals for the Eighth Circuit denying his petition for a writ of habeas corpus. *Williams v. Steele,* 571 U.S. 839 (2013).

9. On December 17, 2014, the Missouri Supreme Court issued an execution warrant scheduling Williams to be executed on January 28, 2015.

10. On January 9, 2015, Williams filed a petition for a writ of habeas corpus in the Missouri Supreme Court. Resp. Ex. I-1. Williams alleged that further DNA testing could demonstrate that he was innocent of the murder of F.G..

8

11. The Missouri Supreme Court appointed a special master to "insure DNA testing of appropriate items at issue in this cause and to report to this Court the results of such testing." Res. Ex. I-14 at 2.

12. On January 31, 2017, after reviewing the special master's report, the Supreme Court of Missouri denied Williams' petition for a writ of habeas corpus. Resp. Ex. I-15 at 1.

13. On April 20, 2017, the Supreme Court of Missouri issued an execution warrant scheduling Williams to be executed on August 22, 2017. Resp. Ex. K3 at 2.

14. Williams sought review of the Supreme Court of Missouri's denial by filing a petition for a writ of certiorari with the United States Supreme Court. On June 26, 2017, the petition was denied. *Williams v. Steele,* 582 U.S. 937 (2017).

15. On August 14, 2017, Williams filed another petition for a writ of habeas corpus in the Supreme Court of Missouri. Resp. Ex. N-1.

16. On August 15, 2017, the Supreme Court of Missouri denied Williams' petition for a writ of habeas corpus. Resp. Ex. N-5.

17. William again sought review of the Supreme Court of Missouri's denial by filing for a writ of certiorari with the United States Supreme Court. *Williams v. Larkin,* 583 U.S. 902 (2017). On October 2, 2017, the petition was denied. *Id.*

18. On August 22, 2017, former Governor Eric Greitens issued Executive Order 17-20, which included an executive stay of Williams' execution and created a board of inquiry to investigate Williams' conviction. It is unknown whether the Board of Inquiry reached a conclusion or issued a report or recommendation.

19. On June 29, 2023, some 5 years and 10 months after former Governor Greitens issued his executive order, Governor Michael L. Parson issued Executive Order 23-06, which dissolved the board and lifted the executive stay of Williams' execution.

20. On June 30, 2023, the Attorney General filed a renewed motion to set Williams' execution date in the Supreme Court of Missouri. Resp. Ex. P-1.

21. On August 23, 2023, Williams filed a petition for declaratory judgment in the Cole County Circuit Court, naming Governor Parson and the Attorney General as defendants. Resp. Ex. Q-1.

22. After the Cole County Circuit Court denied Governor Parson's motion for judgment on the pleadings, Governor Parson sought a permanent writ of prohibition or, in the alternative, a permanent writ of mandamus from the Supreme Court of Missouri directing Judge S. Cotton Walker, Circuit Judge of Cole County Circuit Court, to grant the motion for judgment on the pleadings. Resp. Ex. Q-14.02.

23. After briefing and argument, the Supreme Court of Missouri made its preliminary writ of prohibition permanent on June 4, 2024, and directed Judge Walker to grant Governor Parson's motion for judgment on the pleadings. Resp. Ex. Q-14.17.

24. Clemency gives the Governor the power to extend mercy to prisoners, but it is not another round of judicial review. *See Ohio Adult Parole Authority v. Woodard,* 523 U.S. 272, 284 (1998). Missouri's Constitution gives Governor Parson the sole power to decide how he will consider clemency applications and whether he will grant them. Governor Parson can grant clemency "for whatever reason or for no reason at all." *Olim v. Wakinekona,* 461 U.S. 238, 250 (1983).

25. On January 26, 2024, Movant filed a motion under § 547.031 R.S.Mo. 2021, to vacate the first-degree murder conviction and death sentence of Marcellus Williams.

26. Four claims were raised: (1) that Williams may be actually innocent of first-degree murder; (2) that Williams' trial counsel provided ineffective assistance in failing to better impeach two witnesses for the State who testified that Williams confessed to them; (3) that Williams' trial counsel provided ineffective assistance in failing to present different mitigating evidence "contextualizing" Williams '"troubled background"; and (4) that the State committed *Baston v. Kentucky,* 476 U.S. 79 (1986) violations by allegedly exercising preemptory strikes of jurors on the basis of race.

27. It is of utmost importance to this Court, that in denying Williams' motion to withdraw the most recently issued execution warrant, the Missouri Supreme Court held that it has already considered and rejected these four claims. *State of Missouri v. Williams,* 2024 WL 3402597 at 3 n.3.

28. During the pendency of this case, the parties received a DNA report dated August 19, 2024, from Bode Technology. Resp. Ex. FF. That report

10

indicated that Bode Technology had developed DNA profiles from Keith Larner (the assistant prosecuting attorney now retired who prosecuted Williams' criminal case), and Edward Magee (a former investigator for the St. Louis County Prosecuting Attorney's office). The August 19, 2024 report, when reviewed in conjunction with the previous DNA reports from the handle of the knife used in the murder of F.G., indicated that the DNA material on the knife handle was consistent with Investigator Magee (matching 15 of 15 loci found by Fienup, who did the DNA testing on the knife handle), and 21 of 21 loci found by Dr. Norah Rudin in her subsequent review of Fienup's results. Resp. Ex. I-13.27 at 4 & Resp. Ex. I-13.29 at 20-23. Rudin and Fienup were Williams' retained experts. Resp. Ex. I-13.25 at 1; Resp. Ex I-13.29 at 2.

29. This new evidence is not consistent with the Movant's theory that the results found by testing the knife handle for Y-STR "touch DNA" in 2015 matched or could match an unknown person or that the results could exculpate Williams.

30. In addition, the report is consistent with trial testimony by a crime scene investigator, who indicated that the suspect wore gloves.

31. On August 21, 2024, the date on which the evidentiary hearing was originally scheduled, Movant and Williams entered into a consent judgment vacating Williams' first-degree murder conviction and death sentence in exchange for a *North Carolina v. Alford* 400 U.S. 25 (1970) plea to first-degree murder in exchange for a sentence of life without parole.

32. The Attorney General objected after participating in discussions with this Court, which included a phone conversation with a member of F.G.'s family.

33. The Missouri Supreme Court issued a preliminary writ of prohibition overturning the consent agreement and *Alford* plea and directing this Court to conduct a hearing in this matter.

34. On August 25, 2024, Movant filed a motion for leave to amend the motion to vacate or set aside in an attempt to advance two additional claims. Claim 5 alleged a claim of bad-faith evidence destruction under *Arizona v. Youngblood,* 488 U.S. 51 (1998). Claim 6 asserted a claim that the original trial judge's denial of a motion for a continuance violated Williams' right to due process.

35. Over the State's objection, this Court granted Movant leave to amend the motion to advance the *Youngblood* claim (Claim 5) of bad-faith destruction

11

of fingerprints and bad-faith destruction of DNA evidence on the handle of the knife that was used in the murder of F.G.. This Court denied Movant's motion for leave to amend as to the claim of a violation of due process through the denial of a continuance (Claim 6). The Missouri Supreme Court held that the trial court did not abuse its discretion in denying the continuance. *Williams v. State,* 168 S.W.3d 433, 444-45. Under the law of the case doctrine, the decision of a court is the law of the case for all points presented and decided. *State v. Graham,* 13 S.W.3d 290 (Mo. banc 2000).

## AUGUST 28, 2024 HEARING FINDINGS

36. The Prosecuting Attorney called six witnesses in support of its Motion to vacate, including expert David Thompson; Judge Joseph L. Green, Williams' lead penalty phase counsel at his original trial; Dr. Charlotte Word, an expert witness in DNA testing; Judge Christopher E. McGraugh, Williams' lead guilt phase counsel at his original criminal trial; Prosecutor Keith Larner, the prosecuting attorney at Williams' original criminal trial; and Patrick Henson, an investigator for Movant's Conviction and Incident Review Unit.

### DAVID THOMPSON

37. Thompson testified over the State's objection concerning the reliability of witnesses H.C. and L.A. Hrg. Tr. At 25-64.

38. Thompson concluded, based upon evidence-based standards, that H.C. and L.A. gave unreliable information to investigating officers. *Id.*

39. Thompson acknowledges that he did not review the trial transcript, which included the trial testimony of the officers who interviewed H.C. or L.A., or the trial testimony of H.C. or L.A. themselves. *Id.* 53-55. Had he done so he would have had the opportunity to confirm trial counsels' exemplary efforts to discredit the testimony of H.C. and L.A in the presence of the jury. Despite trial counsels' efforts the jury found the testimony of H.C. and L.A. credible.

40. Thompson's testimony does not aide in deciding the issues currently before this Court.

### The Hon. Joseph L. Green

41. Judge Green testified that roughly one month before the Williams' trial, he was co-counsel in another capital case representing Ken Baumruk, who was also tried in the 21st Judicial Circuit. *Id.* at 69. He participated in a half-day

12

sentencing proceeding in the Baumruk capital case during Williams' trial. *Id.* at 69-70.

42. Judge Green testified, which is supported in the record from the trial, his complaints about the prosecutor's purported failure to disclose information and evidence in a timely manner, including witness notes and the mental history of H.C and Williams' MDOC records that were used by the State in the penalty phase. These issues were memorialized in a Verified Motion for Continuance and a Supplemental Motion for a continuance filed and argued on the record and denied by the trial court. *Id.* at 78-79.

43. Judge Green testified that he did not recall one way or the other whether anyone touched the knife without gloves during trial. *Id.* at 82-83.

44. This Court finds that Judge Green testified earnestly, compassionately, honestly, and to the best of his recollection, but as he admitted his memory was better at the time he testified in Williams' post-conviction relief case in 2004.

45. Despite Judge Green's testimony that he believes Williams "did not get our best". *Id.* at 82, this Court disagrees. Based upon review of the trial transcript, PCR transcript, and Judge Green's affidavit, Judge Green without reservation performed his duties as trial counsel in an exemplary fashion.

46. Judge Green's testimony before this Court does not support either of the claims of ineffective assistance of counsel raised in Movant's motion to vacate, which were already rejected by the Supreme Court of Missouri. *Williams,* 168 S.W.3d at 440-42 (rejecting claim that counsel was ineffective for not better investigating and impeaching H.C. and L.A.), 443 (rejecting claim that counsel was ineffective for not presenting more or different mitigation evidence).

47. With respect to Movant's motion to amend his motion regarding the trial court's denial of the motion for continuance which this Court denied, the Missouri Supreme Court has already found that the trial court did not abuse its discretion in denying a continuance. *Id.*

**Dr. Charlotte Word**

48. Dr. Word, an expert witness in DNA testing, testified for Movant, Hrg. Tr. At 98-152. This Court finds that Dr. Word's testimony established three important facts, none of which were helpful to Movant.

13

49. First, the DNA material found on the knife handle likely belongs to Investigator Magee (and also possibly Larner), and not to some other yet identified individual alleged by Williams and Movant to actually be responsible for the murder of F.G.. *Id.* at 152.

50. Second, if DNA material from the murderer was ever present on the knife handle, any such material could have been removed by individuals subsequently touching the knife handle without gloves. *Id.* at 152-53.

51. Third, Dr. Word has no idea what the procedures for evidence handling were in the St. Louis Prosecuting Attorney's Office, or in any crime lab for any St. Louis law enforcement entity at the time of the investigation into F.G.'s murder or at the time of Williams' trial. *Id.* at 151.

52. This Court finds that Dr. Word's testimony did not bolster Movant's claim of actual innocence.

53. Movant claimed that the DNA material of the "actual" killer was on the knife handle. This theory was clearly refuted by Dr. Word's testimony. In addition, Dr. Word's testimony provides no support for the theory of bad-faith destruction of evidence. *State v. Deroy,* 623 S.W.3d 778, 791 (Mo. App. E.D. 2021).

**Judge Christopher E. McGraugh**

54. Judge Christopher E. McGraugh is a circuit judge for the City of St. Louis and was Williams' lead guilt-phase counsel along with the Hon. Joseph Green. Hrg. Tr. at 158-66.

55. Judge McGraugh testified he does not remember anyone touching the evidence "outside the evidence bag" without gloves. *Id.* at 162.

56. Judge McGraugh testified that he was not told prior to trial that an "investigator" had been handling the knife without gloves. *Id.* at 164.

57. This Court finds that Judge McGraugh testified credibly as to his recollection of events. But the Court notes that he had difficulty remembering the events of the trial in 2001, roughly twenty-three years ago. Resp. Ex. D-1 at 47-48, 50, 59, 63, 67, 71, 83. This Court also finds that his memory, that no one handled the knife without gloves, is not consistent with the record and the evidence before this Court, including the fact that he was present in the courtroom when the knife handle was held without gloves. Resp. Ex. A at 2262-64, 2314.

14

**Keith Larner**

58. Keith Larner was the lead prosecutor in the Marcellus Williams case. Hrg. Tr. at 166-67. Larner testified that the two- informant witnesses, H.C and L.A., were the "strongest" witnesses he ever had in a murder case. *Id.* at 172. Larner testified that H.C. knew things that only the killer could know. *Id.* at 239. Larner testified that H.C. knew the knife was jammed into F.G.'s neck, that the knife was twisted, and that the knife was left in F.G.'s neck when the murderer left the scene, details which were not public knowledge. *Id.*

59. Larner testified that L.A. was "amazing." *Id.* Larner testified that she led police to where Williams pawned the computer taken from the residence of the murder scene, and that the person there identified Williams as the person who pawned it. *Id.* at 240. Larner testified that L.A. also led police to items stolen in the burglary in the car Williams was driving at the time of the murder. *Id.* at 240-41.

60. Larner testified that he knew from talking to Detective Vaughn Creach that the killer wore gloves. *Id.* at 183-85.

61. Larner testified that he believed it was appropriate to handle the knife without gloves after the crime laboratory had completed their testing, after he was informed that no one wanted any more testing on the knife, and after he was informed the laboratory found there were no fingerprints and nothing to link any individual to the crime. *Id.* at 192-93.

62. Larner testified he handled the knife without gloves at least five times prior to trial. *Id.* at 180-87. He showed the knife to four witnesses (two detectives, F.G.'s husband, and the medical examiner) and affixed an exhibit sticker on the knife for use at trial. *Id.* at 180-81.

63. Larner testified credibly that he had never heard of touch DNA in 2001 and probably did not hear of it until 2015. *Id.* at 241. Larner testified that the standard procedure in the St. Louis Prosecuting Attorney's Office at the time of Williams' trial was not to wear gloves when handling fully tested evidence because there was no reason to. *Id.*

64. Larner testified that he did not open untested fingernail clippings at trial without gloves because he did not want to contaminate them. *Id.* at 246.

65. Larner recalled that he had used three peremptory challenges on African Americans because the Missouri Supreme Court opinion listed three *Baston* challenges addressed in Williams' direct appeal. *Id.* at 220. The additional

15

3 preemptory strikes of Black jurors were not challenged in Williams' direct appeal. *State v. Williams,* 97 S.W.3d 462, 471-72 (Mo. banc 2003).

66. Larner denied systematically striking potential Black jurors or asking Black jurors more isolating questions than White jurors.

67. This Court finds that Larner had a good faith basis and reasons for handling the knife without gloves, despite Dr. Word's testimony that agencies that collected evidence at or near the time of this murder knew about the importance of properly collecting evidence to preserve any biological substance. (PA's Ex.80).

**Patrick Henson**

68. This Court heard testimony from Patrick Henson, an investigator for Movant's Conviction and Incident Review Unit. Hrg. Tr. at 263-71.

69. Henson testified that he did not find Larner's notes from jury selection in the file retained by the St. Louis Prosecuting Attorney's Office during his review of the file sometime in 2024. *Id.* at 266.

70. Henson testified he had no knowledge of where or how long the file was stored, nor what the file did, or did not contain, at anytime prior to 2024. *Id.* at 268.

71. Henson reviewed the Williams file and did not find any notes from the prosecutor pertaining to voir dire. *Id.* at 265-66.

72. Henson also testified that he never reviewed the State's trial exhibits, which were in the possession of the Missouri Supreme Court, and that no attorney from Movant's office ever asked him to retrieve those exhibits. *Id.* at 270-72.

73. This Court finds that Henson testified credibly and to the best of his ability, but that his limited knowledge of relevant facts with what procedures were in place for file retention during the years in question, undercuts the probative value of his testimony as to any issue presently before this Court.

## CONCLUSIONS OF LAW

This Court makes the following conclusions of law:

74. In his first claim on behalf of Williams, Movant asserts that Williams' "may be" actually innocent of first-degree murder. Mot. at 29-36.

16

75. Generally, in support of his claim that Williams is innocent, Movant alleged that DNA testing excludes Williams as the person whose DNA was found on the knife used in the murder. Mot. 22-24; that members of H.C.'s family would provide testimony that H.C. is a liar and "known" informant, Mot. at 24; that L.A.'s friends would provide testimony that she is a liar and "known informant [,]" *Id.*; and that G.R., to whom the stolen laptop was sold, was prevented "from testifying about where he learned Mr. Williams obtained the laptop." *Id* at 35.

76. Prior to the enactment of § 547.031, offenders who were sentenced to death could raise a freestanding claim of innocence in the Supreme Court of Missouri. *State ex rel. Armine v. Roper,* 102 S.W.3d 541, 547 (Mo. banc 2003). Williams asserted such a claim before the Supreme Court of Missouri. *Williams v. Steele,* SC94720 (Mo. 2017), Resp. Ex. I-1 at 6. The Supreme Court of Missouri has heard the majority of the DNA evidence Movant now asks this Court to consider, with the exception of the recent DNA results that weakens Movant's claim and demonstrates that Investigator Magee is the likely source of the DNA on the knife. Further, the Supreme Court has already denied that claim. *Williams* 2024 WL 3402597 at 3 n.3. Further, the Supreme Court of Missouri has already determined that the other evidence underpinning Movant's first claim allegations of the existence of impeachment material concerning H.C. and L.A. was at least in part not admissible at Williams' trial. *Williams v. State,* 168 S.W.3d 433, 439-42 (Mo. banc 2005). The same is true about the self-serving hearsay concerning the location of the laptop. *Williams v. State,* 97 S.W.3d 462, 468-69 (Mo. banc 2003).

77. In his second claim on behalf of Williams, Movant asserted that Williams' trial counsel provided ineffective assistance of counsel by failing to investigate and impeach witnesses H.C and L.A.. Mot. at 41-43. Williams has raised these claims before. The Supreme Court of Missouri rejected Williams' claims that his counsel provided ineffective assistance regarding investigating and impeaching H.C. and L.A.. *Id.* at 440-43. After considering the entire record, the Supreme Court of Missouri denied each of these claims. *Id.*

78. In his third claim, Movant alleges on behalf of Williams that penalty-phase counsel provided ineffective assistance by not presenting a penalty-phase defense based on Williams' allegations that he experienced an abusive childhood. Mot. at 44-53.

79. At the post-conviction hearing, Judge Green testified that it was the trial team's defense strategy to present Williams in a positive light as a person who had good qualities and was a positive influence on his children, rather

than an "inhuman beast," and to combine that strategy with a residual doubt strategy. Resp. Ex. D-1 at 122-23.

80. Once again Williams presented this claim to the Supreme Court of Missouri during his Rule 29.15 post-conviction proceedings. *Williams v. State,* 168. S.W.3d 433, 443 (Mo. banc 2005). And, as with the other claims, the Supreme Court of Missouri denied Williams' claim of ineffective assistance and affirmed the motion court's decision that presenting an abusive childhood strategy would have been contrary to the chosen defense strategy and would not have changed the outcome. *Id.* The Court went on to hold that the motion court did not clearly err in denying this claim without an evidentiary hearing. *Id.*

81. In relation to claims two and three, the Missouri Supreme Court has already rejected these claims when it considered them under *Strickland v. Washington,* 466 U.S. 668 (1984). Movant cannot repackage these claims into actual innocence claims to receive relief for Williams, especially when the actual innocence standard is much harder to meet than the *Strickland* prejudice standard. *Id.* at 703.

82. In his fourth claim, Movant alleges two *Baston* challenges on behalf of Williams. Mot. at 53-63. Specifically, Movant alleges that the State exercised discriminatory peremptory strikes of two members of the venire. Venireperson 64 and Venireperson 65. Mot. at 53-62.

83. The Supreme Court of Missouri rejected Williams' *Baston* challenges to these same venirepersons on direct appeal. *State v. Williams,* 97 S.W.3d 462, 471-72. The Supreme Court of Missouri found that the State had provided race neutral reasons to support its strikes of Venireperson 64, *Id.,* and Venireperson 65. *Id.* at 472.

84. Our Missouri Constitution vests the State's judicial power in "a supreme court, a court of appeals…and circuit courts." Mo. Const. art. V, § 1. It further provides, "The supreme court shall be the highest court in the state…. Its decisions shall be controlling in all other courts." Mo. Const. art. V, § 2; *see also State ex rel. Strong v. Griffith,* 462 S.W.3d 732, 734 (Mo. 2015) (stating that it is not appropriate to raise a post-conviction claim in habeas corpus that the court has already rejected in ordinary course). This Court, therefore, cannot reverse, overrule, or otherwise decline to follow the previous decisions of the Supreme Court of Missouri that populate the long procedural history in Williams' case. *See* Mo. Const. rt. V. § 2; *see also Strong,* 462 S.W.3d at 734.

18

85. Because Movant's first, second, third, and fourth claims before this Court have previously been denied by the Supreme Court of Missouri when the very same claims were raised by Williams in his § 547.031 motion, this Court must now deny them. *See State v. Williams,* 2024 WL 3402597 at 3 n.3; *see also State v. Johnson,* 654 S.W.3d 883, 891-95 (Mo. 2023).

86. Movant's fifth claim in his amended motion which this Court granted leave to file shortly before the hearing, over the States objection, alleged that the State had engaged in bad-faith destruction of evidence under *Arizona v. Youngblood,* 488 U.S. 1051 (1988).

87. Movant alleged that the bad faith destruction of evidence occurred when police destroyed fingerprint lifts determined to be without evidentiary value, and when the prosecutor and his investigator touched the handle of the murder weapon without wearing gloves.

88. The United States Supreme Court has "held that when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld." *Illinois v. Fischer,* 540 U.S. 544, 547 (2004). "[I]n *Youngblood,* by contrast, [the Court] recognized that the Due Process Clause 'requires a different result when [a court] deal[s] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subject to tests, the results of which might have exonerated the defendant." *Id.* quoting *Youngblood,* 488 U.S. at 57). The Court stated that the "failure to preserve this potentially useful evidence does not violate due process '*unless a criminal defendant can show bad faith on the part of the police.*'"*Id.* at 547-48.

89. Our state courts have similarly applied *Youngblood,* finding that when the State fails to preserve evidence that "might have exonerated the defendant [,]" a defendant must show that the State acted in "bad faith" in order to establish a due process violation. *State v. Deroy,* 623 S.W.3d 778, 790 (Mo. App. 2021). When the State acts in good faith in accordance with its normal practice, no due process violation lies when potentially useful evidence is destroyed. *Id.* at 791. The requirement to show that bad faith has no exceptions. *See Id.* (citing cases from the Missouri Supreme Court holding that there is a bad faith requirement and holding that those cases must be followed).

90. Movant and Williams have made arguments before this Court indicating that the knife handle was central to the State's case or that, without additional unblemished testing, Williams has no avenue to prove his actual innocence. The United States Supreme Court has specifically refuted

similar arguments that have also attempted to change or remove the bad faith requirement of *Youngblood. See Illinois v. Fisher,* 540 U.S. at 547.

91. Here, neither Movant nor Williams presented any evidence from which this Court could find that the State destroyed potentially useful evidence in bad-faith, let alone clear and convincing evidence of the same.

92. The record before this Court refutes the allegation of bad-faith destruction of latent fingerprints. Indeed, the trial transcript indicates that latent fingerprints of insufficient quality for comparison were destroyed. Resp. Ex. A at 95-96, 3241. Specifically, Detective Thomas Krull testified that he received fingerprint lifts that were of insufficient quality to be used for comparison and those were destroyed after it was determined that the lifts were useless. *Id.* at 2324, 2340-41. No evidence was presented that this was done in bad faith. Because Movant has failed to met his burden of proof, this Court finds the claim of bad-faith destruction of fingerprint evidence to be without merit.

93. In addition, Movant did not carry his burden to demonstrate bad-faith destruction of whatever genetic material, if any, was present on the handle of the murder weapon prior to the knife handle being touched by Larner, Investigator Magee, and any other individuals.

94. Larner testified that he believed it was appropriate to handle the knife without gloves after the crime laboratory had completed their testing, he was informed that no one wanted any more testing on the knife, and the laboratory found there were no fingerprints and nothing on the knife to link any individual to the crime. *Id.* at 192-93. Larner stated that this belief was bolstered by the information provided by Detective Creach indicating that the killer had worn gloves, which, in turn was supported by the testimony of H.C. *Id.* at 192-93.

95. Larner testified that he carried the knife around without gloves during Williams' trial and handed it to a witness who was not wearing gloves and "[n]o one said anything." *Id.* at 247.

96. This Court finds that Larner testified credibly concerning the touching of the knife and that his testimony, as well as the other evidence in the state court record, refutes a claim that he, or any other State-actor, acted in bad faith by touching the knife handle without gloves and Movant's theory has no probative value.

97. Because Movant failed to prove his claim by clear and convincing evidence, this Court finds Movant's fifth claim to be without legal merit.

*See Fisher,* 540 U.S. at 547-48; *see also Youngblood,* 488 U.S. at 57-58; *Deroy,* 623 S.W.3d at 790. Movant's fifth claim is denied.

98. The State argues that Movant is judicially estopped from proceeding on Movant's first claim, which alleges Williams may be actually innocent of first-degree murder. This Court rejects this argument as the State has failed to show that Movant's position is clearly inconsistent with his earlier position. In addition, Movant's attempt to enter an *Alford* plea did not create an unfair advantage or impose an unfair detriment on the State if not estopped. *Vacca v. Mo. Dep't of Labor & Ind. Rels.,* 575 S.W.3d 233, 236-37 (Mo. 2019).

99. "To make a free-standing claim of actual innocence, [Movant] must make a clear and convincing showing of [Williams'] innocence. *State ex rel. Dorsey v. Vandergriff,* 685 S.W.3d 18, 25 (Mo. 2024). Clear and convincing evidence "instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true." *Id.* (*quoting Armine,* 102 S.W.3d at 548). In *Dorsey,* the Supreme Court of Missouri found that new expert opinions that Dorsey could not deliberate did not meet this test in light of the facts of the crime. *Id.* at 25-26.

100. The Supreme Court of Missouri has emphasized that the first step in actual innocence analysis is considering whether the "new" evidence is new in the sense that it was "not available at trial." *State ex rel. Barton v. Stange,* 597 S.W.3d. 661 n.4 (Mo. 2020); *accord Dorsey,* 685 S.W.3d at 24-25 (Both gateway and freestanding claims of actual innocence require "new evidence to support the claim that was not available at trial…."). Other appellate courts have expressed a similar requirement. *State ex rel. Nixon v. Sheffield,* 272 S.w.3d 277, 284-85 (Mo. App. 2008) (stating evidence is only "new" if not available at trial and could not have been discovered through the exercise of due diligence.) Additionally, when considering whether excluded evidence supports innocence only, evidence "tenably claimed to have been wrongfully excluded" may be considered in a claim of innocence. *Schlup v. Delo,* 513 U.S. 298, 328 (1995).

101. A claim that cannot meet the gateway standard of showing by a preponderance of the evidence that no reasonable juror would convict in light of new evidence, necessarily cannot meet the higher freestanding innocence standard of proof by clear and convincing evidence. *Barton,* 597 S.W.3d 661, 665 (Mo. 2020) ("Because the evidence is insufficient to make a gateway claim of actual innocence by a preponderance of the evidence, it necessarily is also insufficient to support a freestanding claim of actual innocence, which requires clear and convincing evidence of actual

innocence."); *State ex rel. McKim v. Cassady,* 457 S.W.3d 831, 843 (Mo. App. 2015).

102. Here, Movant's evidence regarding Williams' freestanding innocence claim fails.

103. As herein above described, the freestanding innocence claim pled in Movant's original motion unraveled during the pendency of this case, when the parties received a DNA report, dated August 19, 2024, from Bode Technology. Resp. Ex. FF.

104. In light of this report, Movant cannot demonstrate that the genetic material on the knife handle can form a basis for "a clear and convincing showing" of Williams' innocence. *Dorsey,* 685 S.W.3d at 25. Movant failed to present "clear and convincing evidence of actual innocence…that undermines the confidence in the judgment [,] and his claim must be denied. § 547.031.3 R.S.Mo.

105. Movant's remaining evidence amounts to nothing more than re-packaged arguments about evidence that was available at trial and involved in Williams' unsuccessful direct appeal and post-conviction challenges. That repackaged material cannot form the basis for relief under § 547.031.3 or the *Armine* standard. *See Johnson,* 554 S.W.3d at 895 (denying a stay for claims that were "largely just re-packaged versions of claims [the convicted individual] ha[d] brought (and seen rejected) many times before"); *see also Barton,* 597 S.W.3d at 664 n.4 (describing the required threshold showing that the proffered evidence is new).

106. As stated above, in support of his claim of innocence on behalf of Williams, Movant alleged that members of H.C.'s family would provide testimony that H.C. is a liar and "known informant." Mot. at 24. Movant alleges that L.A.'s friends would provide testimony that she is a liar and "known informant." *Id.* Movant further alleged that G.R., to whom the stolen laptop was pawned, was prevented by objection "from testifying about where he learned Mr. Williams obtained the laptop." *Id.* at 35. Movant asserted that Williams "had not himself secured the laptop, but rather had gotten it from his 'girl'[L.A.]." *Id.* Movant alleges that this information makes a clear and convincing showing of actual innocence. It does not.

107. None of this evidence is "new" as it was available at trial. And, in relation to the evidence found to be inadmissible by the Missouri Supreme Court, Movant cannot now claim that the purported evidence was wrongfully excluded under Missouri law because the Missouri Supreme Court, the

22

highest authority on Missouri law, has held that the evidence was properly excluded. Mo. Const. art. V, § 2; *Schlup,* 513 U.S. at 328.

108. Movant alleged in his motion that Williams' trial counsel provided ineffective assistance in not presenting the evidence he inconsistently alleged was new. *See* Mot. at 29-36, 36-43. But setting that aside, the record demonstrates that the evidence allegedly impeaching H.C. and L.A. was available at the time of trial. *See Williams v. State,* 168 S.w.3d at 440-42. And Movant's assertions that L.A.'s purported unreliability, "was similarly not presented to the jury [,]" Mot. at 34, is summarily refuted by the Supreme Court of Missouri. *See Williams v. State,* 168 S.W.3d at 441. In denying Williams' ineffective-assistance-of-counsel, the Supreme Court of Missouri stated: "As the motion court correctly found, this testimony would have been cumulative to the evidence at trial because the record contained evidence of [L.A.]'s drug addiction, prostitution, and that she might receive reward money for testifying at trial. Counsel will not be found ineffective for deciding not to introduce cumulative evidence." *Id.*

109. As for G.R.'s laptop testimony, the Supreme Court of Missouri found the circuit court properly excluded the evidence as self-serving hearsay. *State v. Williams,* 97 S.W.3d at 468. Movant has not explained why this Court should now consider evidence that remains inadmissible in considering whether Williams has made a showing of innocence, and this Court may not second-guess the Supreme Court of Missouri's ruling on the issue of admissibility. *See* Mo. Const. art. V, § 2; *see also Strong,* 462 S.W.3d at 734.

110. Further, contrary to Movant's argument that the jury did not hear this evidence, the Missouri Supreme Court, in discussing the rule of completeness objection from Williams, found that, "Williams was not precluded from showing that [L.A.] once had possession of the laptop. He introduced evidence from two witnesses who said they saw [L.A.] with the laptop during the summer of 1998." *State v. Williams,* 97 S.W.3d at 468-69. The substance of the evidence concerning G.R. was before the jury in Williams' trial and they nevertheless found him guilty. *Id.* Thus Movant cannot now use that same evidence to mount a freestanding innocence challenge. *Barton,* 597 S.W.3d at 664 n. 4; *Sheffield,* 272 S.W.3d at 284-85.

111. Movant's remaining evidence in support of Williams' claim of freestanding innocence amounts to nothing more than old evidence, self-serving hearsay, and evidence the jury could never hear. The evidence presented fails under the standard enumerated in § 547.031.3 or in *Amrine.* Movant has failed to demonstrate any basis for this Court to find Williams actually innocent of first-degree murder.

23

112. As the Supreme Court of the United States recognized nearly fifty years ago, the trial occupies a special role in our constitutional tradition:

> A defendant has been accused of a serious crime and this is the time and place set for him to be tried by a jury of his peers and found either guilty or not guilty by that jury. To the greatest extent possible all issues which bear on this charge should be determined in this proceeding: the accused is in the court-room, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens.

*Wainwright v. Sykes,* 433 U.S. 72, 90 (1977).

113. Every claim of error Williams has asserted on direct appeal, post-conviction review, and habeas review has been rejected by Missouri's courts.

114. There is no basis for a court to find that Williams is innocent, and no court has made such a finding. Williams is guilty of first-degree murder, and has been sentenced to death.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that:

Movant's motion to vacate or set aside Williams' conviction and sentence is hereby **DENIED.**

SO ORDERED:

_____
Honorable Bruce F. Hilton
Circuit Judge, Division 13
September 12, 2024

Cc: Attorneys of record e-filed pursuant to Rule 103